Raja J. JEHA, et al., Plaintiffs,

v.

**ARABIAN AMERICAN OIL COMPANY, Defendant.**

**Civ. A. No. H–90–2027.**

United States District Court, S.D. Texas.

Nov. 16, 1990.

**124**

Nada M. Makdissi, Houston, Tex., for plaintiffs.

Robert E. Meadows, Sewell & Riggs, Houston, Tex., for defendant.

## OPINION ON FORUM NON CONVENIENS

HUGHES, District Judge.

### 1. Introduction.

Raja Jeha was a Lebanese employee of Aramco, working in Saudi Arabia. His wife, Selwa Jeha was treated in Saudi Arabia by doctors employed by Aramco. The Jehas have filed a medical malpractice claim out of the treatment given to Mrs. Jeha in Saudi Arabia. On Aramco's motion, the case will be dismissed because this is an inconvenient forum.

### 2. Background.

Mr. Jeha was an employee of Aramco. He was recruited in Lebanon and technically hired in Saudi Arabia. The Jehas were citizens of Lebanon, living in Saudi Arabia at the time Mrs. Jeha was treated by Aramco doctors. Under Mr. Jeha's employment contract, Aramco furnished medical care to Mr. Jeha and his dependents in Saudi Arabia. On several occasions between October 1986 and April 1988, Aramco physicians at an Aramco medical facility in Saudi Arabia examined Mrs. Jeha to assess the medical significance of a lump in her breast.

In July 1988, Aramco terminated Mr. Jeha's employment. He and his wife returned home to Lebanon. In October 1988, she was examined by a physician in Lebanon, who diagnosed cancer from a biopsy of a lump in her breast. The cancer was treated in Lebanon. After the operation, the Jehas have apparently made a trip or two to the United States, including Houston. The Jehas still reside in Lebanon.

In June 1990, the Jehas brought this suit against Aramco alleging that Aramco was liable for Mrs. Jeha's damages resulting from the Aramco physicians' failure properly to diagnose Mrs. Jeha's condition. The choice of the Southern District of Texas as the site of the litigation was based on the location of an Aramco subsidiary, Aramco Services, in Houston. Aramco Services is a Delaware corporation, with its principal office in Houston. That is the only connection between this region and the case.

### 3. Inconvenient Forum.

Forum non conveniens states that courts should decline to hear cases that are more equitably decided by tribunals of another jurisdiction, frequently another country. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290 (5th Cir. 1989). A court should consider these factors when deciding whether a forum is convenient:

A. Is there an available foreign forum?

B. Is the available foreign forum adequate?

C. Are there aspects of the plaintiff's position that make it practical and fair to employ this forum rather than another?

D. Are there aspects of the defendant's position that make it practical and fair to employ this forum rather than another?

E. Is there a substantive policy or an administrative interest of either the chosen forum, the United States, or the available alternative foreign state that make it appropriate to exercise or to decline jurisdiction in this case?

The Jehas argue that *forum non conveniens* is inapplicable in this case because the state courts of Texas do not recognize the doctrine for this type of claim.

■ The Jehas are correct in that *forum non conveniens* has been abolished in Texas. The state courts of Texas have historically relied on a complicated series of venue statutes. These statutes precluded the development of a body of law about forum convenience on cases within the state. Between Texas and sister states or foreign countries, Texas courts have not applied *forum non conveniens* since 1913 when the legislature statutorily abolished the doctrine. Tex.Civ.Pract. & Rem.Code, § 71.031 (1987); *See Dow Chem. Co. v. Alfaro,* 786 S.W.2d 674 (Tex.1990).

The Jehas' argument is misplaced. Federal procedure governs whether this court is an appropriate forum, even in a diversity case. "[T]he interests of the federal forum in self-regulation, in administrative independence, and in self-management" allow a federal court to decline to exercise its jurisdiction when it is a *forum non conveniens. In re Air Crash Disaster,* 821 F.2d 1147, 1159 (5th Cir.1987). Upon Aramco's motion the court considers *forum non conveniens.*

4. *Availability and Adequacy of Foreign Forums.*

■ A foreign forum is available if the entire transaction and all of the necessary parties are amenable to its jurisdiction. A foreign forum is adequate if the aggrieved party has reasonable access to some legal remedies. The foreign forum does not need to reproduce precisely the benefits available in a court in this country. *In re*

*Air Crash Disaster,* 821 F.2d at 1165. Both Saudi Arabia and Lebanon are available and adequate forums for the resolution of the Jehas' claims.

A. *Lebanon.*

(1) *Availability.* The Jehas assert that, because Lebanon lacks jurisdiction over Aramco, a Lebanese court is not an available forum. The Jehas offered no facts to support this assertion. In this event, Aramco has agreed to waive its jurisdictional defenses to suit in Lebanon. *See Coakes v. Arabian Am. Oil Co.,* 831 F.2d 572 (5th Cir.1987). The court concludes that Lebanon is an available forum.

(2) *Adequacy.* Faud S. Kawar, a Lebanese attorney, testified that a Lebanese court would exercise jurisdiction and that Lebanon recognizes a cause of action for a physician's negligence. The Jehas have offered no evidence to the contrary. The court concludes that Lebanon has a forum that is adequate.

B. *Saudi Arabia.*

(1) *Availability.* Saudi Arabian courts will exercise jurisdiction in a case involving a Lebanese plaintiff who formerly resided and worked in Saudi Arabia for Aramco. A Saudi Arabian court is an available forum.

(2) *Adequacy.* Ismail S. Nazer, an attorney licensed to practice in Saudi Arabia and an expert on Saudi law, testified that Saudi law "recognizes a cause of action for medical negligence." In Saudi Arabia such claims are "regularly handled by a quasi-judicial special commission called the Legal Medical Commission." The commission consists of a judge, who is chairman of the commission (nominated by the Minister of Justice), a legal advisor (nominated by the Minister of Health), a university professor (nominated by the Minister of Higher Education), and two physicians (nominated by the Minister of Health). The decisions of the Medical Commission are appealable to a body known as the Board of Grievances. A claim in the Medical Commission can be filed either

by an attorney for the claimant or by the claimant *pro se.* Aramco has agreed to waive any defense of limitations. The Jehas have offered no evidence. Saudi Arabia provides an adequate forum for the Jehas' claims.

### 5. Private Interests.

 In evaluating the private interests of the litigants, the court considers the relative ease with which each party could present his case in the two forums. Among the factors are access to sources of proof, availability of compulsory attendance of witnesses, necessity for inspection of places, enforceability of a resulting judgment, increased travel or housing costs, and additional circumstances of relative costs and expedience of a trial in either this or another forum. All obstacles to a fair and practical trial in either place should be considered. A litigant may not try to vex the other side by selecting a costly, alien forum. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

The Jehas have directed the court's attention to no aspect of this case that makes a trial in Texas essential for their just recompense.

### 6. Evidence.

The evidence in this case will come from either Saudi Arabia or Lebanon. No one disputes that Mrs. Jeha received all of the medical treatment from Aramco doctors in Saudi Arabia. The individual doctors were from Egypt and England, but they still live and work in Saudi Arabia. A Lebanese doctor, practicing in Lebanon, diagnosed the breast cancer and performed a partial mastectomy in Lebanon. Crucial documentary evidence about Mrs. Jeha's medical history and the progress of Mrs. Jeha's cancer are in Lebanon and Saudi Arabia. The evidence in Lebanon is virtually inaccessible from within the United States. To require these doctors to travel to Texas or to require the lawyers to go to them in Lebanon would be wasteful. Doctors should not be forced to endure unnecessary, prolonged absences from their medi-

cal duties. *See Trans–United Industries, Inc. v. Renard Linoleum & Rug Co.,* 212 F.Supp. 373, 374 (E.D.Pa.1962).

While a willing witness could be brought to the United States only at considerable expense, no American court could compel the testimony of a witness now living in Saudi Arabia or Lebanon. Mrs. Jeha has received medical treatment in this country since leaving Saudi Arabia, but they have made no effort to depose Mrs. Jeha's new physicians who live in the United States. Aramco offered to permit the Jehas to use the depositions in all foreign forums, but the Jehas undertook no depositions. All parties would have greater ease of access to sources of proof in an action in Saudi Arabia or Lebanon. *See Coakes v. Arabian Am. Oil Co.,* 831 F.2d 572 (5th Cir. 1987).

Evidence about Mr. Jeha's employment contract also would be either in Lebanon or Saudi Arabia. Aramco recruited Mr. Jeha while he was living in Lebanon. During the entire period of his Aramco employment, Mr. Jeha resided in Saudi Arabia. The Aramco personnel records are in Saudi Arabia, and his former supervisors are in Saudi Arabia.

### 7. Geographical Relation.

One form of vexation is geographical oneupsmanship. Distance, even in this age of convenience and speed, equals cost.

#### A. Texas Connection.

The Jehas have argued that Aramco has significant contacts in Texas. The evidence to support this allegation, however, consists of activities by a separate company, Aramco Services Company, a wholly-owned subsidiary of Aramco. This lawsuit has no connection with Aramco Services' acts in Texas or Saudi Arabia. Aramco Services is not a party, and the Jehas have not attempted to establish the viability of Aramco's corporate existence.

#### B. American Connection.

As this case in its factual transactions has no relation to Texas, so it also has no connection to the United States of America, except that Aramco is a Dela-

ware corporation. Its principal place of business is in Dhahran, Saudi Arabia. No fact was suggested by the Jehas that connected the transactions of his employment or her injury to the United States. A maudlin, irrational theory of a conspiracy by all oil companies against all workers was argued but not supported.

### C. Saudi Connection.

The worker, his wife, the employer, the doctors, the injury, the records, the employment, the work site, and the applicable law are in Saudi Arabia.

### 8. Plaintiffs' Preference.

The court gives little weight to the Jehas' private interest in their choice of a forum because they and the transaction are strangers to this forum. The Jehas are citizens and residents of a foreign country. When an American plaintiff selects a particular American forum, the court gives some deference to the plaintiff's right to avail himself of the "privileges and immunities of citizens of the United States." When the plaintiff is a foreigner, however, his choice of forum needs to be supported by facts or law relevant to the American public's interest in their system for the administration of justice.

### 9. Aramco's Interest.

Aramco's principal office and many of its employees are in Saudi Arabia. Aramco has a significant interest in not having its employees brought half-way around the world to defend a lawsuit. In addition, every person who participated in the acts charged to be negligent resides in Saudi Arabia. The private interests balance is strongly in favor of the defendant.

### 10. Private Interests Compel Saudi Arabia.

Because obtaining evidence from abroad is difficult, because the Jehas are not United States citizens, and because the dispute is wholly unrelated to Houston, Texas, the private interest factors favor dismissal.

### 11. Public Interest.

Even if the private factors would make this case appropriate for decision here, the court considers the public interest. That question has two parts: First, is the American public interest in the administration of justice implicated by the merits of the dispute? Second, if not, is the public interest adversely affected by procedural, fiscal, or mechanical factors?

### A. Substantive.

If the Jehas were American citizens, an arguable American interest might lie in the treatment of alien workers by countries that frequently employ numerous American expatriate workers. Two facts compel the opposite conclusion. First, there is no claim in this case of discriminatory treatment of dependents of expatriate workers in Saudi Arabia. Saudis are treated by these same doctors in these same clinics as are the outsiders. Second, the higher compensation paid to expatriate workers in Saudi Arabia compensates the workers for a number of deprivations including some of the direct benefits of their country's protection such as laws, courts, and processes.

### B. Administrative.

Administrative factors include the problems caused by court congestion, the local interest in having controversies decided locally, the avoidance of unnecessary application of a foreign law, and the unfairness of burdening citizens in an unrelated forum with the costs of litigation. *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 508–10, 67 S.Ct. at 843–44.

### C. Conclusion.

There is no public interest in trying this case in a court of the United States.

(1) No party to this lawsuit is a citizen of the United States; it is likely that no witness will be a resident of the United States.

(2) No event giving rise to this suit occurred in the United States.

(3) No law of the United States applies to the resolution of this suit, foreign law applies.

(4) No policy or right of the United States or its people is implicated.

12. *Applicable Law.*

Because the most significant relationship between the controversy and an available forum determines the law to be applied, the substantive law of Saudi Arabia governs this case. Since the malpractice did not occur in Texas, the plaintiffs are not Texas citizens, Aramco does no business in Texas, and the entire transaction has no significant connection to Texas, Texas has no legitimate interest in applying its law to resolve this claim. On the other hand, as the place where the tort occurred, the place of residence of the plaintiffs at the time, and the site central to the parties' relationship, Saudi Arabia, has great interest in applying its law.

Saudi Arabia has a greater, and more direct interest in the issue of whether the medical care is rendered properly at the Aramco clinic. The quality of medical care affects the care given to the kingdom's own people and affects its ability to attract foreign workers. The public interest particularly favors dismissal of this case because the application of foreign law in an American court, combined with the logistical difficulties of securing evidence and testimony from abroad, would make administration of this suit in an American court next to impossible. An imprudent exercise of judicial power in this case would only further congest already crowded dockets. *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984). *See also Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253, 102 S.Ct. 252, 264, 70 L.Ed.2d 419 (1981).

13. *Equity at Large.*

The Jehas have argued that it is un-American to deny them the world's best forum and American rights because they happen to be foreigners. The United States, more than any country in the world, looks carefully to the application of American rights to foreigners who happen to be

here. *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). We do not hold as an ideal or practice that America shall be obliged to furnish its public services to anyone in the world who may choose to prefer them to their own country's services. This case, to be candid, has nothing to do with America's commitment to justice or to the plaintiffs' legal complaint; it is an attempt to convert America's fragile resource of public civil law into an open buffet for plaintiffs and their lawyers. Money, not justice, is the magnet for cases like this.

14. *Conclusion.*

■ The Jehas' lawsuit will be dismissed without prejudice conditioned on Aramco's waiver of the defense of limitations that may have accrued during the time from June 26, 1990, until ninety days after the final disposition of this case and on a waiver of its jurisdictional defenses to suit in Lebanon. The Jehas shall bear the costs of court.