Richard L. SIMCOX and Karen Simcox, Plaintiffs,

v.

McDERMOTT INTERNATIONAL, INC., McDermott, Inc., Malmac SDN BHD, Hydro Marine Services, Inc. and Eastern Marine Services, Inc., Defendants.

Civ. A. H–92–3014.

United States District Court, S.D. Texas, Houston Division.

Jan. 26, 1994.

Robert B. Keaty, Michael P. Wilty, Eugene P. Redmann, Keaty & Keaty, Lafayette, LA, for plaintiffs.

Innes Mackillop, Ronald L. White, Brown Sims Wise & White, Houston, TX, for defendants.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is defendant McDermott Incorporated's ("McDermott") Motion to Dismiss on the Basis of *Forum Non Conveniens* (Docket Entry # 31) in which the other defendants join. After considering the motion, the affidavits in support, the submissions of the parties, the arguments of counsel, the pleadings, and the applicable law, the court is of the opinion that the motion should be granted.

### I. *Factual Background.*

Richard Simcox ("Simcox") and his wife, Karen, are citizens of the United Kingdom, living in Wales. On December 3, 1990, he signed an employment agreement with defendant McDermott International, Inc. ("McDermott International"), a Panamanian corporation, to serve as a diving supervisor in Southeast Asia. The contract was signed by Simcox and McDermott International in the Republic of Singapore. Simcox also exe-

cuted six addenda, agreeing that his services could be assigned to certain subsidiaries and affiliates of McDermott International, including defendant Malmac Sdn. Bhd. ("Malmac"). In the Malmac addendum, Simcox agreed to perform services at the direction of Malmac within the territorial jurisdiction of Malaysia. Malmac is a Malaysian corporation with its principal place of business in Kuala Lumpur, Malaysia. Simcox's employment contract provides, *inter alia:*

> INJURIES, ILLNESSES AND COMPENSATION
>
> In the event of any occupational illness or injury, Employer and Employee agree that Employee's benefits for such occupational illness or injury shall be governed by and in accordance with the laws of the country having jurisdiction over the area where the occupational injury occurred or illness arose. Notwithstanding the foregoing, in the event that it is determined that the Employee's benefits against Employer under the laws of the country having jurisdiction are not at least equal to the benefits afforded for a like occupational illness or injury under the laws of the Republic of Panama, Employer and Employee agree that the Employee's benefits will be adjusted so that he or she will receive benefits equal to those that would have been due under the laws of the Republic of Panama.

The Simcoxes allege that on September 28, 1991, Simcox was injured when he slipped and fell when walking along a passageway aboard the Derrick Barge No. 26 ("D/B 26"). The passageway was being cleaned by janitors, and Simcox claims that he slipped on soapsuds. The D/B 26 was being operated by Malmac and was working in the Jerneh Field in the South China Sea, offshore western Malaysia.

At the time of the incident, the D/B 26 was and continues to be registered in Panama and flies the Panamanian flag. It was owned by defendant Hydro Marine Services, Inc. ("Hydro"), a Panamanian corporation with its registered offices in Nassau, Bahamas. Hydro had bareboat chartered the D/B 26 to defendant Eastern Marine Services, Inc. ("Eastern"), also a Panamanian corporation

with its registered offices in Nassau, Bahamas. Eastern had in turn bareboat chartered the vessel to Malmac. McDermott International holds either, directly or indirectly, a shareholding in Malmac, Hydro, and Eastern.

## II. *Procedural History.*

The Simcoxes initially filed this suit in state court in Harris County, Texas, on August 24, 1992. The Simcoxes had previously filed an action in Louisiana, which they voluntarily dismissed. Although the petition is rather obtuse, the Simcoxes appear to allege, *inter alia,* that Simcox, in his capacity as a merchant seaman and while working in the course and scope of his employment aboard the D/B 26, was injured as a result of defendants' negligence. They also claim that the defendant employer breached the implicit and explicit terms of the private employment agreement signed by Simcox. The plaintiffs further allege that by virtue of the private employment contract, Simcox is entitled to recover "sustenance" and "found" of not less than $2,500 per day, payment for past and future medical expenses, exemplary damages, and attorneys' fees. In addition, Karen Simcox seeks recovery for loss of consortium.

The case was removed to federal court on October 1, 1992, by defendant McDermott, a Delaware corporation with its principal place of business in New Orleans, Louisiana, on the basis of diversity of citizenship. McDermott asserted that the two other defendants, McDermott International and McDermott Southeast Asia Pte. Ltd. ("McDermott Southeast Asia"), had been fraudulently joined because the Texas court lacked personal jurisdiction over them. McDermott Southeast Asia was subsequently dismissed by plaintiffs from this proceeding, and McDermott International's motion challenging personal jurisdiction has not been ruled on by this court.

The Simcoxes did not file their motion to remand until February 5, 1993, well beyond the thirty-day removal period set forth in 28 U.S.C. § 1447(c). Due to the untimeliness of the remand motion, plaintiffs waived all nonjurisdictional defects in the removal procedure. Accordingly, because this matter orig-

inally could have been brought in federal court, as it involves a maritime personal injury action that falls within this court's admiralty jurisdiction under 28 U.S.C. § 1333, plaintiffs' motion to remand was denied on August 12, 1993.[1] On that date, Plaintiffs were also ordered to file their response to McDermott's *forum non conveniens* motion on or before October 15, 1993.

Shortly thereafter, on August 31, 1993, one day before the effective date of the Texas Forum Non Conveniens Statute, TEX.CIV. PRAC. & REM.CODE ANN. § 71.051, the Simcoxes filed a third lawsuit, this time in Brazoria County, Texas. In that case, the plaintiffs sued three additional defendants, Malmac, Hydro, and Eastern, seeking personal injury damages and asserting claims for breach of Simcox's private written employment contract, the same contract relied upon in the suit already pending in Houston federal court. Moreover, in an instrument entitled "Plaintiffs' Preliminary Memorandum in Opposition to Motion for Forum Non Conveniens Dismissal" (Docket Entry # 71), filed in this court on October 20, 1993, plaintiffs stated:

> Pursuant to the well-settled principles of notice pleading, the plaintiffs respectfully maintain that *the pleadings removed to this Honorable Court clearly encompass the prosecution of all claims flowing from Mr. Simcox' injuries and disabilities.*

(emphasis added). *Id.* at 6. Defendants removed the Brazoria County case to federal court in Galveston on October 21, 1993, and on November 9, 1993, filed their motion to consolidate the Galveston action with the case pending in this court. This court granted the motion to consolidate on December 7, 1993, finding that both cases arose from a common nucleus of operative facts, contained common questions of law and fact, and were in large part duplicative. Indeed, the plaintiffs had already conceded that the pending Houston federal action encompassed *all* the

claims flowing from Simcox's injuries and disabilities. The court in Galveston entered a similar order on December 8, 1993, consolidating the action removed from Brazoria County with this action. On December 21, 1993, this court denied plaintiffs' motion to remand the claims initially asserted in the Brazoria County action.

### III. *Analysis.*

 The doctrine of *forum non conveniens* rests upon a court's inherent power to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice. *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1153–54 (5th Cir.1987) ("*Air Crash Disaster*"), *vacated on other grounds sub nom. Pan American Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Through this power, a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, where it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 261, 102 S.Ct. 252, 268, 70 L.Ed.2d 419 (1981); *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 530–31, 67 S.Ct. 828, 835, 91 L.Ed. 1067 (1947); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *Air Crash Disaster*, 821 F.2d at 1154.

 In *Gilbert*, the Supreme Court established a balancing test whereby lower courts must weigh a variety of public and private interest factors in determining a motion to transfer or dismiss under the doctrine of *forum non conveniens*. *See Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843. In *Air Crash Disaster*, the Fifth Circuit confirmed the criteria established in *Gilbert* and set forth a three-prong test:

> (1) Is there an available and adequate alternative forum;

---

1. For the first time, in an opposition to the *forum non conveniens* motion, plaintiffs revealed that this suit also encompassed claims against the "Health Care Plan for Employees of McDermott Incorporated—Plan 505" for failure to pay medical benefits to Simcox. Plan 505 is an employee benefit plan within the purview of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Accordingly, this case also falls with this court's federal question jurisdiction under 28 U.S.C. § 1331. A partial summary judgment dismissing these claims was granted on January 25, 1994.

(2) If so, do the relevant factors of private interest mandate dismissal; and

(3) Do the relevant factors of public interest mandate dismissal.

*Air Crash Disaster*, 821 F.2d at 1165–66; accord *Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1145–46 (5th Cir.), *cert. denied*, 493 U.S. 918, 110 S.Ct. 279, 107 L.Ed.2d 259 (1989). The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice. *Koster*, 330 U.S. at 527, 67 S.Ct. at 833. The defendant bears the burden of invoking the doctrine and persuading the court that the outcome of the *forum non conveniens* analysis favors dismissal. *Air Crash Disaster*, 821 F.2d at 1164. This court finds that defendants have met their burden.

### A. Existence of Alternative Forum.

For a *forum non conveniens* dismissal to be appropriate, an available and adequate foreign forum must exist. A foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum. *Id.* at 1165; *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir.1986). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court. *Air Crash Disaster*, 821 F.2d at 1165 (citing *Piper*, 454 U.S. at 255, 102 S.Ct. at 265); *Syndicate 420*, 796 F.2d at 829.

### 1. Availability of Remedy.

Based on affidavits presented by attorneys licensed to practice in the United Kingdom, Singapore, Malaysia, and Panama, it is apparent that a remedy is available to the Simcoxes in any of these forums. All of these countries provide persons injured in the instant context with remedies based both on tort and contract. The affidavits establish that the types of damages recoverable by plaintiffs in the foreign forums are quite similar to those that could be recovered in this forum. Specifically, the other forums recognize damages for pain and suffering, special damages, and loss of future earnings and earning capacity. Any concerns about lack of jurisdiction over the defendants are eliminated by their consent to jurisdiction in the courts of the United Kingdom, Singapore, and Malaysia and waiver of any jurisdictional defenses. *Nolan v. Boeing Co.*, 919 F.2d 1058, 1068 (5th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); *Veba–Chemie v. M/V Getafix*, 711 F.2d 1243, 1245 (5th Cir.1983); *Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 392 n. 12 (5th Cir.1983).

Although the court is mindful that the Simcoxes chose a Texas forum and that deference is generally given to the plaintiff's choice of forum, in this case, no substantial deference is due, as the Simcoxes are citizens of the United Kingdom, living in Wales, with absolutely no ties to the State of Texas. A foreign plaintiff's selection of an American forum deserves less deference than an American citizen's selection of his home forum. *Piper*, 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Air Crash Disaster*, 821 F.2d at 1164; *In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 202–03 (2d Cir.1987); *Jeha v. Arabian Am. Oil Co.*, 751 F.Supp. 122, 127 (S.D.Tex.1990), *aff'd*, 936 F.2d 569 (5th Cir. 1991). When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, the assumption is much less reasonable and courts are reluctant to assume that convenience motivated that choice. *See Piper*, 454 U.S. at 255–56, 102 S.Ct. at 265–66; *Empresa Lineas Maritimas Argentinas v. Schichau–Unterweser*, 955 F.2d 368, 373 (5th Cir.1992).

While this court accords some deference to plaintiffs' choice of this forum, it finds that other private and public interest factors greatly outweigh this choice in view of the Simcoxes' status as citizens of the United Kingdom, the lack of any relationship of the underlying incident to this forum, and the applicability of foreign law.

### 2. Adequacy of Remedy.

The remedies afforded by the courts of the alternative forums also appear to be adequate and are in line with remedies available under Texas and American law. Foreign law is presumed to be adequate, unless the plaintiffs make some showing to the con-

trary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiffs are highly unlikely to obtain basic justice there. *Vaz Borralho,* 696 F.2d at 393. Plaintiffs have not made such a showing, nor has the court been made aware of any conditions that would impede the Simcoxes' ability to obtain basic justice abroad. Any concerns about the enforceability of a judgment obtained in one of the forums are allayed both by the presence of the assets of certain of the defendants in the foreign forums and the condition imposed by the court that the defendants agree to pay any final judgment rendered by the foreign court. In any event, plaintiffs could enforce any judgment it obtained against defendant McDermott in the United States under the Uniform Enforcement of Foreign Judgments Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 35.003.

■ At the oral hearing on defendants' motion, the Simcoxes' counsel contended, unsupported by any affidavits or other evidence, that a trial in the United Kingdom might take up to five years. The affidavit of Patrick John Spears Griggs ("Griggs"), a solicitor of the Supreme Court of the United Kingdom, however, states that "it will generally take between 2 and 3 years to bring a case to trial from the date when proceedings are commenced, although it might be possible to bring a claim to court much more rapidly, if the parties co-operated fully." This period does not compare unfavorably with that prevailing in many state and federal courts in Texas and elsewhere in the United States. Moreover, if the Simcoxes had initiated their action in the British court system, where they reside, shortly after the incident, instead of filing three suits in various locations in the United States, over two years of the waiting period would have already elapsed. Any delay at this juncture will be alleviated in part by the agreement of the defendants' solicitors to accept service on behalf of all the defendants and the requirement that the defendants exercise their best efforts to expedite the proceeding. While this case currently has a trial setting of November 14, 1994, it does not appear to be close to being ready for trial, as only limited discovery has been conducted and there are outstanding motions concerning personal jurisdiction and summary judgment. Full discovery and pre-trial briefing would be essential before presenting to a Texas jury or to this court a dispute about the amount of compensation due for personal injuries sustained in Malaysian territorial waters, involving the application of Malaysian, Panamanian, and possibly Singaporean law. Therefore, while the parties might experience more delay in the United Kingdom, this court cannot conclude that a British forum would not provide an adequate remedy. *See In re Union Carbide Corp. Gas Plant Disaster,* 634 F.Supp. 842, 848 (S.D.N.Y.1986).

■ Moreover, the fact that discovery may be more limited in the United Kingdom or that jury trial is not available does not render plaintiffs' remedy in the United Kingdom inadequate. *Gas Plant Disaster,* 809 F.2d at 206, 634 F.Supp. at 851. The Griggs affidavit establishes that the discovery and inspection of documents is required, as well as the provision of expert reports, in courts of the United Kingdom. A jury trial likewise would have been unavailable in this court for the Simcoxes' ERISA claim and, in the absence of diversity, their admiralty claim. The courts of the United Kingdom repeatedly have been held to be adequate to adjudicate a host of disputes involving complex tort, contract and admiralty issues. *See, e.g., Piper,* 454 U.S. at 255, 102 S.Ct. at 265; *Nolan,* 919 F.2d at 1068–69; *Coakes v. Arabian Am. Oil Co.,* 831 F.2d 572, 575–76 (5th Cir.1987); *Syndicate 420,* 796 F.2d at 829; *Feenerty v. Swiftdrill, Inc.,* 706 F.Supp. 519, 524 (E.D.Tex.1989); *Harrison v. Wyeth Lab.,* 510 F.Supp. 1, 7–9 (E.D.Pa.1980), *aff'd,* 676 F.2d 685 (3d Cir.1982). Indeed, the hallowed traditions of the British legal system were developed and flourished for centuries before this country was even founded. British common law forms the basis for our legal system as well as that of numerous other countries. To suggest that the courts of the United Kingdom are inadequate compared to those of Texas or the United States is both impudent and ill-founded. Furthermore, the Simcoxes, as British citizens, should not be heard to complain that the justice system of their own country is not satisfactory for the reso-

lution of this rather ordinary "slip and fall" case.

 The plaintiffs may not defeat a motion to dismiss on the basis of *forum non conveniens* merely by showing that the substantive law that would be applied in an alternative forum is less favorable to them than the chosen forum. *Piper,* 454 U.S. at 250–51, 102 S.Ct. at 263. An unfavorable change in the law occasioned by adjudication in a foreign forum generally is not a relevant factor in the forum analysis. *Piper,* 454 U.S. at 250, 102 S.Ct. at 263; *Gas Plant Disaster,* 634 F.Supp. at 846. Similarly, the comparative amount of recovery obtainable in the alternative forums has never been considered a factor relevant to the *forum non conveniens* inquiry. *Pain v. United Technologies Corp.,* 637 F.2d 775, 794 (D.C.Cir.1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). It is only when the change in law results in no remedy at all or in unfair treatment to the plaintiff may the alternative forum be deemed inadequate. *Piper,* 454 U.S. at 254, 102 S.Ct. at 265; *Empresa,* 955 F.2d at 372; *Gas Plant Disaster,* 634 F.Supp. at 846. In any event, it would be the height of arrogance to insist on the "parochial concept that all disputes must be resolved under our laws and in our courts" and that anything short of American justice is inadequate. *See Ionescu v. E.F. Hutton & Co.,* 465 F.Supp. 139, 146 (S.D.N.Y. 1979). The United States is not required "to be courthouse or law maker for the world." *Vaz Borralho,* 696 F.2d at 390.

### B. *Private Interests of the Litigants.*

 In *Gilbert,* the Supreme Court set forth certain considerations relating to the interests of the litigants and the public that are to be weighed in making a *forum non conveniens* determination. The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gilbert,* 330 U.S. at 508, 67

S.Ct. at 843; *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

### 1. *Access to Proof.*

The ease of access to proof factor weighs strongly in favor of defendants' position that this action should not be tried in the Southern District of Texas but in one of the alternative forums. The plaintiffs, Richard and Karen Simcox, both reside in the United Kingdom. The employment contract was negotiated and executed by Simcox and a representative of the defendants in Singapore. The incident arose aboard a Panamanian vessel in Malaysian territorial waters, when the deck was being cleaned by janitors who reside and work in Southeast Asia. The barge doctor who treated Simcox, who is no longer employed by McDermott International, resides in the Philippines and works in Southeast Asia. In their answer to interrogatories, plaintiffs list other workers, in addition to the doctor, as persons with knowledge of relevant facts, most of whom are no longer employed by McDermott International. Two of these workers are and four were last known to be residents of the United Kingdom, one is an Australian resident, and the other resides in Malaysia. Plaintiffs also list four physicians who reside in the United Kingdom and one who resides in Singapore as persons with knowledge of relevant facts. The only two potential witnesses who reside in the United States are located in Louisiana, one of whom is a physician who administered a magnetic resonance imaging test to Simcox and the other of whom is an expert witness retained by plaintiff to testify about economic losses. There are no potential witnesses listed who reside or work in Texas.

As with the witnesses, the documents relevant to this action are not located in Texas. Documents concerning the employment contract no doubt are in Singapore, where it was executed and signed. Documents concerning the vessel likely are at the registered offices of its owner, Hydro, a Panamanian corporation, in the Bahamas. The medical records concerning Simcox's injuries appear to be located primarily in the United Kingdom, with a few in Singapore and Louisiana.

None of the relevant documents was created or maintained in Texas.

Although some of the witnesses and documents relating to the proof of plaintiffs' case may be located in the United States, this factor alone is insufficient to require that the action be litigated in Texas. *See Vaz Borralho,* 696 F.2d at 387–89; *Dahl v. United Technologies Corp.,* 472 F.Supp. 696, 700 (D.Del. 1979), *aff'd,* 632 F.2d 1027 (3d Cir.1980); *Michell v. General Motors Corp.,* 439 F.Supp. 24, 28 (N.D.Ohio 1977). Because most of the witnesses and documents will come from abroad, it would be more convenient for these witnesses and less costly for the parties to litigate this matter in the United Kingdom, Singapore, or Malaysia, rather than in Texas.

### 2. *Attendance of Witnesses.*

Due to the fact that many of the potential witnesses and documents are located in the United Kingdom or elsewhere overseas, cost considerations dictate that trial in the United Kingdom would be far more expedient. Transportation of the witnesses willing to testify in Texas would be expensive and time-consuming. It would be far less burdensome for the plaintiffs to go to trial in their home country, especially if Simcox has suffered disabling back injuries as he claims. In his answers to interrogatories, Simcox states, "I am unable to sit for a long period without experiencing pain and discomfort in my lower back." It would seem, therefore, that ten-hour trans-Atlantic flights to appear for deposition and trial in Texas would hardly be convenient or comfortable to Simcox or conducive to his recovery. The four British physicians, as well as the other residents of the United Kingdom, listed in plaintiffs' interrogatory responses as potential witnesses, likewise would be better accommodated if they were spared the time and effort of making one or more trans-Atlantic flights to give depositions or appear in court in Houston. Physicians and other key personnel should not be required to endure unnecessary, prolonged absences from their medical practices or business pursuits. *Jeha,* 751 F.Supp. at 126; *Trans–United Indus., Inc. v. Renard Linoleum & Rug Co.,* 212 F.Supp. 373, 374 (E.D.Pa.1962).

Unwilling witnesses present even more of an obstacle. The parties cannot require any of the foreign citizens, or even the Louisiana residents, to appear before this court at trial. Like the United States, the United Kingdom and Singapore are signatories to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Conventions") March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, codified at 28 U.S.C. § 1781 note. *See* Martindale–Hubbell, *International Law Digest,* at p. IC–15 (1992). Therefore, the courts of the United Kingdom have equal access to evidence from the Singaporean witnesses and better access to those in the United Kingdom. This court is in no better position to obtain the testimony of the Southeast Asian janitors, the Filipino physician, or the Malaysian worker than are courts of the United Kingdom.

Likewise, the courts in the United Kingdom have better access to the bulk of the medical documents, as they appear to be located there. They face similar obstacles to obtaining documents from Singapore, but the Hague Conventions are available. In any event, this court is less advantageous, both with respect to the convenience of the parties and the witnesses, than is a court in the United Kingdom.

### 3. *Practical Problems at Trial.*

Practical considerations support dismissal of the action. Because Malaysian, Panamanian, and possibly Singaporean law applies to this dispute, a trial in Texas would present major difficulties to counsel and to the court. Although some of the foreign law appears to be codified, it is likely that case law will have to be consulted to ascertain how certain statutes are construed. In order to craft an appropriate jury charge, access to foreign court decisions would be essential for this court. Reporters and other sources containing these decisions are not contained in the library of the Southern District of Texas. These sources, no doubt, also are not readily available to counsel. The courts have recognized that problems inherently arise when a court is forced to apply a law with which it is unfamiliar. *Pain,* 637 F.2d at 793 n. 101. It would be far more practical to try this case in the courts of a country well-versed in the

698

applicable law. While none of the alternative forums would have expertise in all the laws that may be applicable, at least they would be familiar with the applicable local law. No Texas or American law, however, would be applicable to any of the issues presented in this case.

Moreover, the plaintiffs are in a better position with respect to jurisdiction over the defendants in one of the alternative forums, because all of the defendants have agreed to submit to the jurisdiction of the foreign tribunals. Serious personal jurisdiction questions arise, however, if plaintiffs continue to assert jurisdiction over McDermott International, Malmac, Hydro, or Eastern in this forum. Thus, as a practical matter, a *forum non conveniens* dismissal is more advantageous to all the parties.

### C. *Public Interest Factors.*

■ The central question a court must answer when considering the public interest is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. *Pain*, 637 F.2d at 791. This court's examination of the public interest considerations indicates that no such nexus exists here. There appears to be little or no public interest in this dispute, questions of foreign law predominate, and the retention of jurisdiction will be burdensome to the court and to the community. *See Air Crash Disaster*, 821 F.2d at 1165–66; *Pain*, 637 F.2d at 792.

The public interest factors generally considered in a *forum non conveniens* analysis include:

1. The administrative difficulty flowing from court congestion;

2. The local interest in having localized controversies decided at home;

3. The interest in having a diversity case tried in a forum that is familiar with the law governing the action;

4. The avoidance of unnecessary problems of the conflict of law or the application of foreign law; and

5. The unfairness of burdening citizens in an unrelated forum with jury duty.

*Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843.

### 1. *Choice of Law.*

Choice of law principles dictate that foreign law is applicable to this dispute, a factor this court considers significant in declining jurisdiction. *See Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843; *DeMateos v. Texaco, Inc.*, 562 F.2d 895, 899 (3d Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1449, 55 L.Ed.2d 494 (1978); *Koziol v. The Fylgia*, 230 F.2d 651, 652 (2d Cir.), *cert. denied*, 352 U.S. 827, 77 S.Ct. 40, 1 L.Ed.2d 49 (1956); *Gas Plant Disaster*, 634 F.Supp. at 866; *Del Rio v. Ballenger Corp.*, 391 F.Supp. 1002, 1004 (D.S.C.1975); *Noto v. Cia Secula di Armanento*, 310 F.Supp. 639, 648 (S.D.N.Y.1970).

A choice of law analysis in a maritime action involves a weighing of the factors set forth in *Lauritzen v. Larsen*, 345 U.S. 571, 583–98, 73 S.Ct. 921, 928, 97 L.Ed. 1254 (1953), as expanded by *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970). These include:

1. The place of the wrongful act;
2. The law of the flag;
3. The allegiance or domicile of the injured party;
4. The allegiance of the defendant shipowner;
5. The place where the contract was made;
6. The accessibility of the foreign forum;
7. The law of the forum;
8. The base of operations.

Because the incident occurred in the territorial waters of Malaysia, aboard a vessel flying the flag of Panama owned by a Panamanian corporation that operates in Southeast Asia, allegedly injuring a British citizen, who had signed an employment contract in Singapore with a Panamanian corporation, a balancing of the relevant factors dictates that foreign law, rather than Texas or American law, applies. In fact, the employment contract specifies that Malaysian and/or Panamanian law is the governing law with regard to determining compensation for injured employees.

The same result is reached under Texas choice of law principles, applicable to both contract and tort actions, which adopt a "most significant relationship" test. *See Maxus Exploration Co. v. Moran Bros., Inc.,* 817 S.W.2d 50, 53 (Tex.1991); *Gutierrez v. Collins,* 583 S.W.2d 312, 318–19 (Tex.1979). While it may not be immediately apparent which jurisdiction has the "most significant relationship" to this case, it is clear that it is not Texas, as it has *no* relationship to this controversy. Accordingly, the choice of law factors weigh heavily in favor of the selection of an alternate forum.

### 2. *Local Interest.*

The citizens of this district and of the United States as a whole have little interest in the outcome of this seemingly routine, maritime "slip and fall" case. The alternative forums all have a stronger local interest in this controversy than does this forum. The United Kingdom has a local interest in providing redress to the Simcoxes, British citizens, if they are found to be entitled to relief. All events relating to this action occurred outside the United States and none of the witnesses resides in this district. Because foreign law applies, the decision in this case would have no precedential impact in the United States. As British citizens with no nexus to this state, the Simcoxes have no inherent right to seek relief in this forum. *See Jeha,* 751 F.Supp. at 127–28. Even when an action is filed by an American citizen, the courts have not hesitated to dismiss the complaint for *forum non conveniens* where a danger of injustice, oppression or vexation is found. *See Pain,* 637 F.2d at 791; *Mizokami Bros., Inc. v. Baychem Corp.,* 556 F.2d 975, 977–78 (9th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978).

There are no significant interests that would be furthered by this court's adjudication of this uniquely foreign dispute. *See Ionescu,* 465 F.Supp. at 146. The incremental deterrence that might be gained if defendants were held liable in Texas as opposed to one of the alternative forums is likely to be inconsequential. The American interest in this controversy is negligible and is insufficient to justify the commitment of judicial time and resources that would inevitably be required if the case were to be tried here. *See Piper,* 454 U.S. at 260–61, 102 S.Ct. at 268–69; *Gas Plant Disaster,* 634 F.Supp. at 862–63.

### 3. *Burden to the Courts and to the Community.*

The courts of this district are congested with cases having a far greater nexus to Texas and to the United States than this dispute. At present, the Southern District of Texas has a number of judicial vacancies and each sitting judge has a heavy caseload. Currently, approximately 7,800 cases are pending in this district and about 280,000 nationwide. The demands of a sizable criminal docket and the priority given to criminal cases leads to an inevitable backlog of civil cases. Therefore, the conservation of judicial resources is an extremely important objective. This objective is better served by this court's dismissal of the instant case. It is not in the public interest to encumber this docket with cases that have no connection to and no precedential impact upon the local community. *See Cuevas v. Reading & Bates Corp.,* 577 F.Supp. 462, 476 (S.D.Tex.1983), *aff'd,* 770 F.2d 1371 (5th Cir.1985); *Gas Plant Disaster,* 634 F.Supp. at 861 (citing *Domingo v. States Marine Lines,* 340 F.Supp. 811, 816 (S.D.N.Y.1972)).

Furthermore, it would be an undue burden upon the citizens selected for jury duty to devote their time and attention to deciding this case rather than the many cases with a far more compelling relationship to local interests. Jury duty is a burden that ought not to be imposed upon the people of a community that has no relation to the litigation. *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. at 843. It would be difficult for a Texas jury, with no familiarity of foreign maritime practice, to understand and apply Malaysian, Panamanian, or Singaporean law to resolve a ship-board "slip and fall" case. Thus, the interests of the court and the community are furthered by this court declining jurisdiction over this matter.

### D. *Injunction Against Further Suits.*

The court has a duty to prevent the further proliferation of lawsuits arising from

this one "slip and fall" incident. The plaintiffs have engaged in blatant forum shopping in a last-ditch effort to circumvent federal jurisdiction and to have this case tried in various state forums that have no interest in the underlying dispute. Additional litigation should be unnecessary, as the plaintiffs have already conceded that the instant proceeding "encompass[es] the prosecution of all claims flowing from Mr. Simcox' injuries and disabilities." Any additional filings would serve no purpose other than to vex and harass the defendants and any other party potentially responsible for the incident in question. As discussed above, no state or federal forum in the United States would be an appropriate or convenient forum for resolution of this dispute. As noted by the court in *Jeha*, 751 F.Supp. at 128:

We do not hold as an ideal or practice that America shall be obliged to furnish its public services to anyone in the world who may choose to prefer them to their own country's services. This case, to be candid, has nothing to do with America's commitment to justice or to the plaintiffs' legal complaint; it is an attempt to convert America's fragile resource of public civil law into an open buffet for plaintiffs and their lawyers. Money, not justice, is the magnet for cases like this.

In maritime cases such as this, the federal *forum non conveniens* doctrine is constitutionally supreme over inconsistent state law, including the Texas Open Forum Statute. *Villar v. Crowley Maritime Corp.*, 780 F.Supp. 1467, 1483 n. 34 (S.D.Tex.1992), *aff'd*, 990 F.2d 1489 (5th Cir.1993); *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 180 (5th Cir.1990); *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1382 (5th Cir.1988); *Exxon Corp. v. Chick Kam Choo*, 817 F.2d 307 (5th Cir.1987), *rev'd on other grounds*, 486 U.S. 140, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). Thus, due to the preemptive effect of federal *forum non conveniens* law, a state court would, on the facts of this case, be required to apply *federal forum non conveniens* law and should come to the same conclusion reached by this court that dismissal is appropriate.

It is well recognized that federal courts have the power under the All Writs Act, 28 U.S.C. § 1651(a), to enjoin litigants who are abusing the court system and harassing their opponents. *Villar*, 990 F.2d at 1489; *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir.1980); *In re Ocean Ranger*, 617 F.Supp. 435 (E.D.La.1985). Indeed, federal courts have broad powers to protect their judgments and the integrity of the courts as a whole. *Villar*, 990 F.2d at 1489; *In re Martin–Trigona*, 737 F.2d 1254, 1262 (2d Cir.1984).

█ The Anti–Injunction Act, 28 U.S.C. § 2283, does not forbid this court from prohibiting the Simcoxes from prosecuting further suits in state court. That statute empowers a federal court to enjoin a state court action "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 720 (5th Cir.1990), *cert. denied*, 499 U.S. 925, 111 S.Ct. 1322, 113 L.Ed.2d 255 (1991); *Villar*, 780 F.Supp. at 1486. This exception "prevents multiple litigation of the same cause of action, and it assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state court judgment which the Supreme Court may or may not decide to review." *Woods Exploration & Producing Co. v. Aluminum Co.*, 438 F.2d 1286, 1312 (5th Cir.1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *In re Ocean Ranger*, 617 F.Supp. at 435. This case falls squarely within the relitigation exception to the Anti–Injunction Act. Accordingly, to effectuate this court's judgment, preclude relitigation, and avoid prejudice to the defendants, an injunction is warranted.

IV. *Conclusion.*

This Court finds that the interests of the parties and of the public are best served by dismissing the instant action on *forum non conveniens* grounds. The courts of the United Kingdom, Malaysia and Singapore all provide an available, adequate, and appropriate forum for the resolution of this dispute.

Therefore, it is ORDERED that this case is dismissed under the following conditions:

1. Plaintiffs may refile their case in a court of competent jurisdiction in the United Kingdom, Malaysia, or Singapore within ninety (90) days of the date of this Order;

2. Defendants shall submit to the jurisdiction of the appropriate foreign court in which plaintiffs have filed suit;

3. Defendants shall waive any statute of limitations or jurisdictional defenses that could be posed in the foreign court;

4. The parties shall be bound by all discovery conducted in this case in the foreign proceeding;

5. Defendants shall make available in the foreign forum, at their own expense, all relevant documents and witnesses within their control;

6. Defendants shall exercise their best efforts to expedite a trial setting in the foreign proceeding, including having their solicitors accept service on their behalf or waiving the initial service requirements under the applicable law;

7. Defendants shall agree to satisfy any final judgment rendered by the foreign court.

This Order of Dismissal shall become final if plaintiffs fail to file suit within ninety (90) days from the date of this Order or if this action is timely filed in one of the alternative forums, defendants comply with all the conditions of this Order, and the appropriate foreign tribunal accepts jurisdiction. Upon the expiration of the ninety (90) day period, the parties shall inform the court of the status of the litigation abroad.

It is FURTHER ORDERED that, except for an appeal of this Order, plaintiffs are enjoined from filing and/or prosecuting any claims arising out of the facts which form the subject matter of this action in any other court, state or federal, in the United States.