STROMAN REALTY, INC., Plaintiff,

v.

Jim ANTT, Jr., et al., Defendants.

Civil Action No. H–98–283.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 28, 1998.

Ralph Gordon, Frederick, MD, for Stroman Realty, Inc.

Thomas G. Heller, Deputy Attorney General, Los Angeles, CA, for California.

Janis Sue Richardson, Tallahassee, FL, for Florida.

Opinion on Denial of Motions to Dismiss

HUGHES, District Judge.

### 1. *Background.*

Stroman Realty is a broker in the secondary market for timeshares in land, usually resort properties. Its only offices are in Texas. The states of Florida and California are trying to force Stroman to comply with licensing, disclosure, escrow, fee, and advertising requirements when it deals with people or land in their states. Florida has sued Stroman in Florida state court to enjoin it from violating Florida's regulations.

Stroman wants to enjoin California and Florida officials from enforcing the statutes. It says they impermissibly burden interstate commerce. The officials claim that the federal judicial authority does not extend to them and that, in any event, its use against them in southern Texas is impermissible. They also urge that this case should be dismissed for improper venue, inconvenient forum, and failure to state a claim, and they argue that the court should abstain. The judicial power of the United States extends to these parties, and this particular court has a sufficiently direct relation to them for it to exercise that power over them. The court declines to dismiss or abstain.

### 2. *National Judicial Power.*

The Constitution excludes from the "Judicial power of the United States" suits "against one of the United States by Citizens of another State." U.S. Const., amend. XI. This provision, which was a reaction in 1795 to a diversity suit, does not apply to suits to enjoin state officers from acting unconstitutionally. *Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). *See also* 17 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4232 (2d ed.1988). This court may hear Stroman's suit to enjoin officials in California and Florida from enforcing regulations that it claims unconstitutionally interfere with interstate commerce. *See In re SDDS, Inc.,* 97 F.3d

1030, 1035–36 (8th Cir.1996) (noting that Eleventh Amendment did not prohibit a declaratory judgment action for a state's "ongoing violation of the dormant commerce clause" and holding that it did not bar a federal case for enjoining the state from relitigating in state court issues a federal court had already decided).

The defendants rely on a recent installment in the judicial accommodation of states' using Eleventh Amendment penumbras to evade responsibility.[1] *See Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). In this recent case, five members of the Supreme Court, in two opinions, agreed that the Eleventh Amendment barred the Couer d'Alene Tribe from proceeding with its suit in federal court to establish ownership of submerged lands against the title of the state of Idaho. The four dissenters found that the case fell squarely within the exception for officers' being sued to stop unconstitutional acts; they would have allowed the suit to proceed.

The defendants' reliance is misplaced for these three reasons:

A. Both defendants disingenuously refer to portions of Justice Kennedy's opinion that only Chief Justice Rehnquist joined and that the Court's other seven members expressly declined to join; two does not a majority make.

B. Even the principal opinion emphasized "the continuing validity of the *Ex parte Young* doctrine" and the "presumption" that "in most cases" when a plaintiff seeks prospective relief in federal court against state officers "ordinarily" the Eleventh Amendment is no bar. *Id.* at ——, 117 S.Ct. at 2034, 2038, 2040. It also emphasized the limited nature of the case in saying, "Under these particular and special circumstances, we find the *Young* ex-

ception inapplicable." *Id.* at ——, 117 S.Ct. at 2043. Stroman's case is classic, not peculiar.

C. The majority's distinguishing of the tribe's action from a typical action to enjoin officers from committing unconstitutional acts largely turned on two facts. First, the suit was essentially an action to quiet title—in effect a transfer of land instead of money—which is plainly prohibited by the current solicitude for governmental power over the rule of law. *Id.* at ——, 117 S.Ct. at 2040, 2043. Second, the Couer d'Alene Tribe did not wish simply to dispossess Idaho of the property; rather, it sought to remove the property from the scope of Idaho's jurisdiction and its governmental authority altogether, implicating the essence of the state's sovereignty. *Id.* at ——, 117 S.Ct. at 2040–41, 2044. Those bases are absent in this case.

This suit is properly in federal court.

### 3. *Personal Jurisdiction.*

The defendants argue that this court lacks personal jurisdiction over them. They say that because enforcement of their statutes against Stroman occurs within their states, they do not have minimum contacts with Texas. This is disingenuous sophistry.

■■■■ The exercise of judicial power requires a connection between the defendant and the court's territory. All that the Constitution requires is that people have fair warning that their activities may subject them to judicial action in a particular place by a particular government. A forum's courts have specific jurisdiction over a defendant when his particular acts with respect to the forum give rise to the dispute; they have general jurisdiction over the defendant when

---

**1.** *See generally Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (inventing a generalized "sovereign" immunity irreconcilable with the nature of the Constitution as a whole, the Fourteenth Amendment, *Texas v. White,* 7 Wall. 700, 74 U.S. 700, 19 L.Ed. 227 (1868), and reason). *See also* Akhil Reed Amar, *Of Sovereignty and Federalism,* 96 Yale L.J. 1425, 1488 n. 251 (1987) (noting that "no state constitution

explicitly provided for sovereign immunity, and that, on the contrary, the charters of several states expressly provided that the state could be sued, in conformity with the general rule that corporations were suable," citing John J. Gibbons, *The Eleventh Amendment and State Sovereign Immunity: A Reinterpretation,* 83 Colum. L.Rev. 1889, 1896–98 (1983)).

he has continuous and systematic contacts with the forum even if the dispute does not arise from his acts in the state. *Helicopteros Nacionales de Colombia, S.A., v. Hall,* 466 U.S. 408, 414–16 & nn. 8–9, 104 S.Ct. 1868, 1872–73 & nn. 8–9, 80 L.Ed.2d 404 (1984); *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1068 (5th Cir.1992). Texas's long-arm statute extends as far as federal due process requirements allow. *Guardian Royal Exch. Assurance, Ltd., v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991).

■ This court plainly has jurisdiction over these defendants; it is part of a government that is clearly and directly related to the two states and their governments. The states have somewhat less attachment to southern Texas than to the United States, but they are seeking to regulate the business of a South–Texas land dealer and his numerous South–Texas customers. The individual officers are asserting a nationwide authority to regulate business, and they are applying their authority against a Texan in Texas. The statutes in question are neither consumer protection measures nor land title regulations: they are—pure and simple—broker regulations. A federal court sitting in Houston is a reasonably logical place to litigate a federal constitutional question arising from the officers' attempt to impose their power on a Texan.

The court has specific jurisdiction over these defendants. California has sent cease and desist orders to Stroman in Texas. It has attacked Stroman in letters to the Texas Real Estate Commission. Florida has written Stroman in Texas demanding that it disclose documents. It has used the Texas Attorney General's office to get information on Stroman. These activities in Texas are not fortuitous or attenuated; they are part of a deliberate effort to exert the officers' authority in Texas. *Burger King v. Rudzewicz,* 471 U.S. 462, 472–75, 105 S.Ct. 2174, 2182–85, 85 L.Ed.2d 528 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 320, 66 S.Ct. 154, 158, 160, 90 L.Ed. 95 (1945). The officers' particular acts with respect to this forum give rise to this dispute; they have used Texas law and Texas government in their efforts to regulate Stroman.

■ Even if the dispute did not arise from their particular acts with respect to this forum, the court has general jurisdiction over them because the defendants have had continuous and systematic contacts with this forum. Despite the *officers'* adamant claims that they have no contact with Texas, both *states* have offices in this city. *See* SOUTHWESTERN BELL, GREATER HOUSTON BUSINESS WHITE PAGES 129, 265 (1998) (listing the California State Board of Equalization, the State of California Franchise Tax Board, and the Florida Department of Revenue—Houston Service Center). While the officers' particular bureaucracies may not have offices in Texas, the officers are part of a larger administrative apparatus that funds and otherwise supports them, and their whole operations have a permanent presence in Texas.

Three other points illustrate the hypocrisy of the defendants' jurisdictional protests. First, the California Department of Real Estate has this on one of its Internet sites:

> If you are not properly licensed in California, you may not solicit California residents. To do so would be considered conducting activity for which a real estate license is required. Because the Internet can be read by anyone in any location, advertising your services on the Internet would be considered soliciting a California resident when read by a resident of this state.

> If you conduct activity which requires a California real estate license, but you are not a California licensee, you could be subject to administrative sanction such as a Desist and Refrain Order.

Apparently California has jurisdiction over anyone using the information superhighway—the entire World Wide Web—but is subject to jurisdiction only within its own borders. Most courts—including courts in California and Florida—have found on-line contacts alone to be an insufficient basis for exercising personal jurisdiction. *See* Andrew E. Costa, Comment, *Minimum Contacts in Cyberspace: A Taxonomy of the Case Law,* 35 Hous. L.Rev. 453, 469, 474, 476, 480 (1998).

Second, both states seek to enforce their statutes in situations that involve only nonresidents as long as the land is in the state. For example, Florida might try to regulate an Oklahoman's selling a Nebraskan a Miami timeshare through a Kansan as a broker, and California might try to regulate a South Dakotan's selling a Marylander a Napa Valley timeshare through a Wisconsin broker. The court invited the defendants to disavow the nationwide scope of their power; they declined. Under their view of the scope of their authority, they would also be able to regulate a Filipino's selling a Belgian an Orlando or San Francisco timeshare through a Pakistani broker.

Third, Florida has asserted lack of personal jurisdiction because "Petitioner has absolutely no presence in Texas" and "Petitioner has no physical presence in Texas." (Petition for Writ of Mandamus at 14, 22.) In the same breath, Florida says, "Stroman is not insulated from suit in other states simply because it is not physically present in them." (*Id.* at 23).

This is double-speak. On the one hand, they argue that they may regulate Stroman *even though* it is from a different state, *even though* it conducts its business from a different state, and *even though* it has only tenuous connections with their states. On the other hand, they argue that this court does not have jurisdiction over them *because* they are from different states, *because* they conduct their business from different states, and *because* they have only tenuous connections with this state.

They cannot have it both ways. They can't have their cake and eat it too. What's good for the goose is good for the gander. It's a two way street. It takes two to tango. These aphorisms about double standards and reciprocity are not often jurisprudential, but they articulate an aspect of fair play and substantial justice. *See McDonald v. Mabee,* 243 U.S. 90, 91–92, 37 S.Ct. 343, 343–44, 61 L.Ed. 608 (1917) (Holmes, J.)

These defendants are subject to this court's jurisdiction.

### 4. *Inconvenient Forum.*

The defendants also claim that this forum is inconvenient. Florida baldly asserts, "It is far more convenient for Stroman to come to Florida—as it has done for purpose [*sic*] of soliciting timeshare sellers and buyers—than it is for Petitioner to come to Texas." (*Id.* at 18.) How that could conceivably be true is unstated.

The inconvenient forum doctrine suggests that a court decline to hear a case that would be more equitably decided by another jurisdiction's tribunals. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 290 (5th Cir.1989); *Jeha v. Arabian American Oil Co.,* 751 F.Supp. 122, 124 (S.D.Tex.1990), *aff'd,* 936 F.2d 569 (5th Cir.1991). The factors to consider in an inconvenient forum inquiry are:

A. Is another forum available for the entire case, and can all parties come within its jurisdiction?

B. Is the alternative forum adequate?

C. Do the parties' private interests suggest the chosen or alternative forum?

D. Does the chosen forum, the United States, or the alternative forum have a public interest, substantive policy, or administrative interest that suggests the chosen or alternative forum?

*Haynsworth v. Lloyd's of London,* 933 F.Supp. 1315, 1323 (S.D.Tex.1996), *aff'd sub nom. Haynsworth v. The Corporation,* 121 F.3d 956 (5th Cir.1997), *cert. denied sub nom. Haynsworth v. Lloyd's of London,* —— U.S. ——, 118 S.Ct. 1513, 140 L.Ed.2d 666 (1998); *Jeha,* 751 F.Supp. at 124.

This forum is proper. California and Florida might be both available and adequate, and both states would prefer not to have the case here. The states assert that this case affects land titles in their territory, making its outcome critical to the economic base of their polities. The broker has at no time sought to invalidate either state's regulations about what is required to pass title or what kinds of title may be passed. This case is not about land; it is about brokers, especially interstate competition among brokers.

The interests called "timeshares" may not be a real interest that would be recognized at common law, although the states both say that they are to be regulated *as if* they were real estate. The states have not identified one interest beyond potential revenue and market protection; the states are not protecting their consumers since the consumers are Texans or other outsiders who are fully protected by their own states. Stroman wants it heard here. Texas has an interest in having the claim heard here given that Stroman is a local business and that many of its customers are Texans.

The court will not transfer the case on inconvenient forum grounds.

### 5. *Venue.*

■ Both defendants have objected to venue in the Southern District of Texas. Venue is proper here if "a substantial part of the events or omissions giving rise to the claim occurred" in this district. 28 U.S.C. § 1391(b)(2) (Supp.1998). The defendants argue that the substantial part of events giving rise to the claim—the enforcement of their regulations—occurred in their states. The court disagrees. Stroman complains of what the defendants have done in Texas: trying to regulate business he does in Texas with non-Californians and non-Floridians that happen to involve property in the defendant states. The contested regulation has included sending letters to Stroman and invoking Texas government to regulate Stroman. Venue in this district is wholly proper.

In the case most factually analogous to this one, however, the Supreme Court has held that venue is improper. *Leroy v. Great Western*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). (Incidentally, none of the parties appear to have referred to *Leroy*.) An Idaho statute restricted purchases of stock with corporations having substantial assets in Idaho. Great Western, a Delaware corporation with Dallas headquarters, attempted to purchase stock in a Washington corporation, Sunshine, that had most of its assets and its executive offices in Idaho. Great Western complied with federal reporting requirements and filed documents with the Idaho Director of Finance. The Depart-

ment of Finance sent objections and requests for additional information to Great Western in Dallas and then delayed the effective date of the tender offer.

Great Western sued the Idaho officials in the Northern District of Texas. They contested venue and jurisdiction in a special appearance. Finding that it had jurisdiction, the district court found venue improper under the general federal venue statute but proper under the Securities and Exchange Act's special venue provision. It also found that the Idaho act impermissibly burdened interstate commerce. The court of appeals affirmed, holding, in the words of the Supreme Court, that "an Idaho official who seeks to enforce an Idaho statute to prevent a Texas-based corporation from proceeding with a national tender offer has sufficient contacts with Texas to support jurisdiction" and concluding that "venue was proper in the Northern District of Texas under the general federal venue provision ... because the allegedly invalid restraint against Great Western occurred there and it was accordingly 'the judicial district ... in which the claim arose.'" *Id.* at 178, 99 S.Ct. at 2714 (last ellipsis original).

The Supreme Court reversed solely on venue grounds without reaching the merits or the jurisdictional question. It rejected the circuit court's conclusion that Dallas was where the Idaho defendants " 'invalidly prevented Great Western from initiating a tender offer for sunshine.'" *Id.* at 183, 99 S.Ct. at 2716. It also rejected the argument that Great Western needed to treat the suit as arising in Dallas to sue in one place officials from Idaho and officials from other states (who had since been dismissed). The complaint raised no justiciable issues against the other defendants, and the venue statute did not allow Great Western to rely on the similarity between the claims or the convenience to itself. Seemingly most relevant for present purposes is this:

> [T]he claim involved has only one obvious locus—the District of Idaho. Most importantly, it is action that was taken in Idaho by Idaho residents—the enactment of the statute by the legislature, the review of Great Western's filing, the forwarding of

the comment letter by [the deputy administrator of securities of the Idaho department of finance], and the entry of the order postponing the effective date of the tender by [the finance director]—as well as the future action that may be taken in the State by its officials to punish or to remedy any violation of its law, that provides the basis for Great Western's federal claim. For this reason, the bulk of the relevant evidence and witnesses—apart from employees of the plaintiff, and securities experts who come from all over the United States—is also located in the State. Less important, but nonetheless relevant, the nature of this action challenging the constitutionality of a state statute makes venue in the District of Idaho appropriate. The merits of Great Western's claims may well depend on a proper interpretation of the State's statute, and federal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere. . . .

We therefore reject the Court of Appeals' reasoning that the "claim arose" in Dallas because that is where Great Western proposed to initiate its tender offer, and that is where Idaho's statute had its impact on Great Western. Aside from the fact that these "contacts" between the "claim" and the Texas District fall far short of those connecting the claim and the Idaho District, we note that this reasoning would subject the Idaho officials to suit in almost every district in the country. . . . In short, the District of Idaho is the only one in which "the claim arose" within the meaning of § 1391(b).

*Id.* at 186, 99 S.Ct. at 2718.

The parallels between that case and the instant one seem to preclude venue in this district. For three reasons, however, the court finds that venue here is proper.

First, the principle derived from that case is of limited vitality today. Congress has dramatically changed the venue statute. The relevant part of the venue statute applied by the Supreme Court provided for venue "in which the claim arose." *Id.* at 178 n. 8, 99 S.Ct. at 2714 n. 8. As revised, the same section now provides for venue "in which a substantial part of the events or omissions giving rise to the claim occurred." Leading commentators have questioned whether the case has continued utility. *See* 15 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 3806 (2d ed. 1986) ("Amendments to the general venue statutes in 1990 have made the Leroy case of historical interest only."). Even before the amendments, *Leroy* was severely criticized for its lack of clarity. *See, e.g., Dody v. Brown,* 659 F.Supp. 541, 546–50 (W.D.Mo.1987) (Wright, J.); *Pfeiffer v. International Academy of Biomagnetic Med.,* 521 F.Supp. 1331, 1341–43 (W.D.Mo.1981) (Collinson, J.). The case itself suggested that a plaintiff could choose venue in an "unusual case" where multiple districts "may be assigned as the locus of the claim" because of their "approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* the plaintiff)."

Second, the transactions giving rise to the dispute in the Idaho case and this one are fundamentally different:

- Great Western was attempting to buy stock in a company that apparently had its principal place of business in Idaho. The transaction involved a Texas party (Great Western), an Idaho party (Sunshine), and an Idaho *res* (the company stock).
- Stroman is attempting to broker the sale of land in Florida and California. The transactions may involve a Texas party (Stroman, the broker), another Texas party (the seller), another Texas party (the buyer), and a California or Florida *res* (the timeshare).

Most of the transactions Idaho sought to regulate involved Idaho. Most of the transactions California and Florida seek to regulate, by contrast, may not involve those states.

Third, the enforcement efforts by the Florida and California officials are significantly greater than those by the Idaho defendants. The Idaho officials only sent a telecopy letter objecting to the tender offer and requesting more information to Great Western and then entered an order delaying the tender offer's

effective date. In this case, both states' officials have sent letters or cease-and-desist orders to Stroman. Alone, that might not be enough to establish venue, but coupled with their invoking the power of the offices of Texas government, it makes this district a proper venue. All of the Idaho defendants' actions were in-state; some of the California and Florida defendants' actions have not been in-state. The Supreme Court did not speak to whether venue might have been proper in Texas if Idaho had used Texas agencies in regulating Great Western. Moreover, Idaho sought to regulate a stock purchase; Florida and California seek to regulate a broker's conduct in Texas. These differences in the present defendants' actions from those of the Idaho officials render this district a proper venue. *Cf. Jarrett v. North Carolina*, 868 F.Supp. 155, 158–59 (D.S.C. 1994) (holding that North Carolina official's mailing files to an attorney in South Carolina was insufficient by itself to establish venue or jurisdiction over North Carolina officials in South Carolina).

### 6. *Abstention.*

 Florida has cursorily asked the court to abstain pending resolution of the action in Florida state court. The court generally has discretion to abstain based on (a) an existing state judicial proceeding (b) implicating important state interests and (c) furnishing a meaningful opportunity to raise constitutional challenges.

 The court will not abstain. Stroman cannot challenge the California regulations in Florida. The Florida action does not encompass even all of the issues raised against Florida in this case. When Florida filed suit against Stroman, it had known for several weeks that Stroman was considering filing this action since Stroman had sent it a draft complaint. Its present complaint that this action—filed the day after the suit in Florida was filed—interferes with the "ongoing" Florida case rings hollows.

### 7. *Other.*

 The defendants have also moved to dismiss on the grounds of comity and federalism. Comity is respect for parallel institutions usually in international law. This court has as much responsibility to use its power when it is proper as it does not to use it when it is improper. In this case the plaintiff is attempting to use the economic union that was an *intended* consequence of the Constitutional Union. Whatever the constitutionally required national deference to state governments may be, it does not include accommodation of multi-state power grabs or protectionist use of regulatory schemes. Federalism is a critical component of the constitutional plan, but it implies something very different from states' being excused from their responsibilities under the Constitution. Federalism militates in favor of this court hearing a claim that two states are burdening interstate commerce.

### 8. *Conclusion.*

The judicial power of the United States extends to these officers. The defendant officers have sufficient contacts with south Texas. Venue is proper here, and this forum is convenient. This court's hearing the case does not transgress comity and federalism. Stroman has sufficiently stated a claim. The court declines to abstain. It will hear the case.

### Order

The defendants' motions to dismiss are denied. The case is not stayed pending the interlocutory appeal.