**Jack J. GRYNBERG and Grynberg Production Corporation, Appellants**

v.

**Miriam Z. GRYNBERG, Rachel S. Grynberg, Stephen M. Grynberg, Individually and as Trustee for the Stephen Mark Grynberg Separate Property Trust; The Stephen Mark Grynberg Separate Property Trust; Celeste C. Grynberg; and Pricaspian Development Corporation, Appellees**

No. 05-16-00636-CV

Court of Appeals of Texas, Dallas.

Opinion Filed November 28, 2017

Patrick James Carew, Dallas, Richard P. Barkley, W. Alan Wright, Cole B. Ramey, Dallas, Tamara Baggett, for Appellants.

Robert Thomas Slovak, Haleigh H. Jones, Stacy R. Obenhaus, Steven Charles Lockhart, Dallas, for Appellees.

Before Justices Bridges, Fillmore, and Stoddart

## MEMORANDUM OPINION

Opinion by Justice Stoddart

This is an appeal from the trial court's order granting a motion to dismiss based on forum non conveniens filed by appellee Pricaspian Development Corporation. In three issues, appellants Jack J. Grynberg and Grynberg Production Corporation argue the trial court abused its discretion by

granting the motion to dismiss. The central issue in this appeal is whether the trial court abused its discretion by concluding the parties' dispute should be litigated in Colorado rather than in Texas. We affirm the trial court's order.

### FACTUAL BACKGROUND

Jack Grynberg[1] formed Pricaspian, a Texas corporation, in 1993 to hold mineral-related assets and provide funds to other ventures engaged in mineral exploration and production. Jack caused Grynberg Production Corporation (GPC), his wholly-owned entity, to assign rights arising out of his oil and gas projects in the Republic of Kazakhstan to Pricaspian.

Eventually Jack assigned shares of Pricaspian to his wife, appellee Celeste Grynberg, and their three children, appellees Miriam Grynberg, Rachel Grynberg, and Stephen Grynberg[2] (collectively, Children). Celeste and the Children also became directors of Pricaspian. Jack, Celeste, Miriam, and Rachel are residents of Colorado. Stephen is a resident of California. Although it is a Texas corporation, Pricaspian maintains its offices and records in Colorado. In an affidavit filed with the trial court, Jack averred: "I have maintained control of the shares within the Pricaspian corporate books at the Office [in Colorado], and have maintained control of the direction and governance of Pricaspian represented by the Pricaspian shares."

Affidavits and exhibits filed by the Children show that on September 8, 2015, the Pricaspian board of directors held a meeting in Denver, Colorado, where the board voted to remove Jack as an authorized

---

1. Because many parties in this appeal share the same last name, we will refer to them by their first names.

2. Stephen subsequently conveyed his shares to a trust of which he is the beneficiary and trustee.

signatory on Pricaspian's bank accounts and install the Children as signatories. Miriam's affidavit states that "[a]s a result of that vote, the board drafted, in Colorado, and transmitted, from Colorado, correspondence to each bank—none of which are [sic] either incorporated or headquartered in Texas—informing the banks of the board's actions." The board held another meeting on February 24, 2016, in Colorado at which it voted to remove Jack as president of Pricaspian and appoint Rachel and Stephen as co-interim CEOs. Jack was appointed to a newly created position of Chairman Emeritus of the Corporation. On March 24, 2016, the Pricaspian board held a meeting in Colorado at which it passed resolutions reducing the number of seats on the board from five to four and removing Jack from the board. Miriam and Rachel each stated in their affidavits that "[a]ny and all actions I have taken in my role as a director and shareholder of Pricaspian occurred in Colorado or other locations outside of Texas." Stephen made a similar statement in his affidavit.[3]

On March 14, 2016, Jack sent letters to each of the Children and Celeste on Pricaspian's letterhead, which shows an address in Colorado, informing the recipients that their shares in Pricaspian were revoked and Jack had filed a lawsuit in Texas for declaratory relief to confirm the revocation. The letters were sent to Rachel, Miriam, and Celeste at addresses in Colorado and Stephen in California. Another letter was sent to Rachel, as Pricaspian's secretary, revoking the assignment of shares from GPC to Pricaspian. This letter also was sent on Pricaspian's letterhead, showing its address in Colorado, to Rachel's address in Colorado. Rachel, in her capacity as secretary of Pricaspian,

received a similar letter on GPC's letterhead. This letter also shows GPC's and Rachel's addresses in Colorado.

Appellants sued appellees in Texas claiming Jack originally transferred ownership in Pricaspian to Celeste and the Children on the condition that Jack would control and operate Pricaspian until his death. Appellants allege "[t]hat arrangement and agreement, which was honored by the Children and Celeste for over twenty (20) years without any dispute or question whatsoever, has resulted in the payment of approximately $160 million dollars [sic] to the Children and Celeste over the years." The petition alleges the parties' dispute arose after Celeste and the Children violated the condition of Jack's gift. Appellants assert the Children "inserted themselves into Pricaspian's banking relationships" and began "attempting to assert control over and/or interfere with the operations and personnel" in Jack's office. Appellants further allege Celeste and the Children have "deliberately interfered with Pricaspian's cash assets and bank accounts . . . including attempting to remove [Jack] from Pricaspian's bank accounts without any notice and attempting to wire all but $65 million of Pricaspian's cash reserves to the IRS." Appellants sought a declaratory judgment and asserted causes of action for breach of contract and breach of fiduciary duty. Appellants also sought the imposition of a constructive trust.

Shortly after the instant suit was filed, appellees filed a lawsuit against Jack, GPC, and others in Colorado. The Colorado litigation is ongoing.

Pricaspian filed a motion to dismiss this lawsuit based on forum non conveniens. In the motion, it argued the only connection

---

**3.** Stephen's affidavit states: "Any and all actions I have taken in my role as a director, officer, and shareholder of Pricaspian occurred in Colorado, New York, California, or other locations outside of Texas."

this lawsuit has to Texas is that Pricaspian is incorporated in Texas. Otherwise, the motion states, "virtually every other party, witness, office, and document related to this lawsuit can be found within a twenty-mile radius of Denver, Colorado." Arguing no material event relating to the case occurred in Texas, Pricaspian moved that the case should be litigated in Colorado. The trial court granted the motion and this appeal followed.

## LAW & ANALYSIS

■■■ The doctrine of forum non conveniens allows a court to exercise equitable powers to avoid imposition of an inconvenient jurisdiction on a litigant based on a court's determination that the convenience of litigants and witnesses and the interests of justice warrant litigating the matter in another forum. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 710 (Tex. App.—Dallas 2010, no pet.). Dismissal on the grounds of forum non conveniens is appropriate when there are sufficient contacts between the defendant and the forum state to confer personal jurisdiction upon the trial court, but the case itself has no significant connection to the forum. *Id.* The defendant bears the burden of invoking the doctrine of forum non conveniens in a motion to dismiss. *Id.*

## A. Internal Affairs Doctrine

■■■ In their first issue, appellants argue the trial court abused its discretion by dismissing claims involving the internal affairs of Pricaspian, a Texas corporation. Appellants assert the internal affairs doctrine is a jurisdictional limitation that requires a court in the state of an entity's formation to exercise jurisdiction over disputes involving the entity's internal affairs.

For purposes of resolving appellants' first issue, we will assume the lawsuit involves the internal affairs of the Pricaspian.[4]

The laws of Texas govern the formation and internal affairs of Texas entities. *See* TEX. BUS. ORGS. CODE ANN. § 1.101. It does not follow, however, that the state of formation is the only state whose courts have jurisdiction to adjudicate disputes concerning the entity's internal affairs. "The internal affairs doctrine is a conflict of laws principle. . . ." *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982); *see also State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 557, n.7 (Tex. 2004) (quoting *Edgar*, 457 U.S. at 645, 102 S.Ct. 2629).

Texas courts apply the internal affairs doctrine as a conflict of laws principle and not, as appellants argue, a subject matter jurisdiction limitation. Texas courts apply the law of an entity's state of formation to disputes involving its internal affairs. *See In re Skyport Glob. Comm's., Inc.*, No. 08-36737, 2011 WL 111427, at *15 (Bankr. S.D. Tex. Jan. 13, 2011) ("Under Texas choice of law rules, the internal affairs of an entity incorporated in Texas will be governed by the laws of Texas. By the same token, actions involving the internal affairs of a foreign corporation are governed by the law of the state of incorporation.") (internal quotations and citations omitted); *see also Neff v. Brady*, 527 S.W.3d 511, 523 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("internal affairs doctrine provides that, with respect to foreign entities, the laws of the entity's jurisdiction of formation govern its internal affairs"); *Regal Ware, Inc. v. CFJ Mfg., L.P.*, No. 11-13-00044-CV, 2015 WL 1004380, at *2 (Tex. App.—Eastland Feb. 27, 2015, no pet.) (mem. op.) (applying Delaware law to

4. The internal affairs of an entity include: (1) the rights, powers, and duties of its governing authority, governing persons, officers, owners, and members; and (2) matters relating to its membership or ownership interests. TEX. BUS. ORGS. CODE ANN. § 1.105.

internal affairs of Delaware corporation); *Ingalls v. S. Union Co.*, No. 01-13-00711-CV, 2015 WL 222169, at *3 (Tex. App.—Houston [1st Dist.] Jan. 15, 2015, no pet.) (mem. op.) ("The parties agree that, under the internal affairs doctrine, Delaware law as the state of Advent's incorporation governs this dispute."); *Highland Crusader Offshore Partners, L.P. v. Andrews & Kurth, L.L.P.*, 248 S.W.3d 887, 890, n.4 (Tex. App.—Dallas 2008, no pet.) ("Delaware law governs the internal affairs of Motient, a Delaware corporation."); *see also.* Tex. Bus. Orgs. Code Ann. § 1.102 ("the law of the state or other jurisdiction in which that foreign governmental authority is located governs the formation and internal affairs of the entity").

Because the internal affairs doctrine is a conflict of law principle rather than a jurisdictional limitation, we conclude the trial court did not abuse its discretion by dismissing claims allegedly involving the internal affairs of Pricaspian on this ground. We overrule appellants' first issue.

### B. Deference to chosen forum

█ In their second issue, appellants argue the trial court failed to apply proper deference to their choice of forum. Quoting the Supreme Court's opinion in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), appellants assert their forum choice should be granted substantial deference which "should rarely be disturbed." *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839.

"Typically, the plaintiff's choice of forum is given great deference when the doctrine of forum non conveniens is being considered." *In re Ford Motor Co.*, 442 S.W.3d 265, 291 (Tex. 2014) (citing *In re Pirelli Tire L.L.C.*, 247 S.W.3d 670, 675 (Tex. 2007)). However, a nonresident's choice of Texas as a forum is generally afforded substantially less deference. *Id.* (citing *Pi-*

*relli Tire*, 247 S.W.3d at 675; *Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010)). In *Quixtar*, the Texas Supreme Court addressed the circumstance, as is present here, where the plaintiff is not a Texas resident but seeks to protect its forum selection.

In *Quixtar*, the Texas trial court dismissed a lawsuit between two businesses on the basis of forum non conveniens. *Quixtar*, 315 S.W.3d at 30. One business was incorporated in Virginia while the other was organized in Nevada. *Id.* Both businesses maintained their principal places of business in Michigan. *Id.* Although the plaintiff in *Quixtar* articulated a corporate connection to Texas, the Texas Supreme Court concluded that because the plaintiff was not a Texas resident, the presumption that it "filed in Texas as a matter of convenience applies with less force and deserves substantially less deference than it would if [the plaintiff] were a Texas resident." *Id.* at 32–33 (quoting *Pirelli Tire*, 247 S.W.3d at 675); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007).

Appellants, the plaintiffs in this case, are not Texas residents. Appellants' petition states Jack is an individual residing in Denver, Colorado, and GPC is a Colorado corporation with its principal place of business in Denver. The only party with a relevant contact to Texas is Pricaspian, a defendant. Because appellants are not Texas residents, their choice of forum is not owed "substantial deference which should rarely be disturbed" as appellants argue. The deference to which it is due is considered below in our analysis of appellants' third issue. We overrule appellants' second issue.

### C. *Gulf Oil* Factors

█ In their third issue, appellants argue the trial court abused its discretion

by dismissing for forum non conveniens based on the *Gulf Oil* factors.[5] We will reverse a trial court's forum non conveniens determination only if the record shows a clear abuse of discretion. *See Quixtar*, 315 S.W.3d at 31 *see also Tin Star Dev., LLC v. 360–Irvine, LLC*, No. 05-15-01244-CV, 2016 WL 7163862, at *2 (Tex. App.—Dallas Nov. 18, 2016, no pet.) (mem. op.). The trial court abuses its discretion when it acts "without reference to any guiding rules or principles." *Quixtar*, 315 S.W.3d at 31. When making its determination on a motion to dismiss based on forum non conveniens, the trial court considers numerous public and private-interest factors set forth in *Gulf Oil*. Where the trial court has done so and its balancing of these factors is reasonable, the trial court's "discretion deserves substantial deference." *Id.* The "mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred." *Id.*; *see also Tin Star Dev., LLC*, 2016 WL 7163862, at *2 (We give the trial court's decision substantial deference: we determine whether there is sufficient evidence to uphold the dismissal, but we do not mechanically reweigh the factors considered by the trial court).

The public-interest *Gulf Oil* factors reflect the interests of the forum and include (1) the burden imposed on the citizens of the state; (2) the burden imposed on the state's court; (3) the general interest in having localized controversies decided in the jurisdiction in which they arose; and (4) the appropriateness in having a diversity case tried in a forum that is familiar with the law that must govern the case. *RSR Corp.*, 309 S.W.3d at 710 (citing *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. 839). The record indicates that defendants filed a second lawsuit in Colorado, which raises many of the same issues and involves the same parties as the instant case, and that litigation is proceeding in Colorado. Accordingly, Colorado's citizens and trial court will not be burdened further than they already have been by the lawsuit filed there. All of the claims dismissed in this lawsuit by the trial court can be resolved in the single case that is pending in Colorado. *Gulf Oil* instructs the trial court to consider any other matters that "make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. Dismissal in this case would promote judicial economy "by reducing the multiplicity of suits related to the same controversy." *Crum & Forster Specialty Ins. Co. v. Creekstone Builders, Inc.*, 489 S.W.3d 473, 484 (Tex. App.—Houston [1st Dist.] 2015, no pet.). It is not convenient to litigate the same claims in two forums. Such a duplication of resources does not help "make trial of a case easy, expeditious and inexpensive." *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. As to the community's interest in having a local controversy resolved "where it arose," the dispute arose in Colorado as a result of actions by Pricaspian's board of directors during board meetings that took place in Colorado and Jack's actions in response, which also were undertaken from his offices in Colorado. The actions about which appellants complain, which form the basis of their lawsuit in Texas, relate to the alleged breach of an agreement to allow Jack to run Pricaspian—and all actions leading to that alleged breach occurred in Colorado.

---

**5.** Generally, before reaching the *Gulf Oil* factors, the first step of the forum non conveniens analysis is to consider whether an alternative forum exists that is available and adequate. However, here, appellants do not argue that Colorado is not an available and adequate forum.

The private-interest *Gulf Oil* factors reflect the private interests of the litigants and include (1) the ease of access to sources of proof; (2) the availability of the compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) all other practical problems affecting the ease and expense of the case; and (5) issues related to the enforceability of a judgment obtained in the forum. *RSR Corp.*, 309 S.W.3d at 710 (citing *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839). The record shows the sources of proof will be located in Colorado because Pricaspian's books and records are maintained in Jack's office in Colorado and numerous witnesses to the events as alleged are in Colorado. None of the evidence is located in Texas. Practically, the ease of the litigation is increased and the expense of the litigation reduced by dismissing the action in Texas so it can be litigated in Colorado.

Although this case involves a single connection to Texas through the incorporation of Pricaspian, it is a controversy involving an entity that maintains its offices in Colorado and individuals who, other than Stephen, reside in Colorado. The relevant events about which appellants complain also occurred in Colorado. *See Quixtar*, 315 S.W.3d at 35 (noting that although Texas has interest in protecting citizens from Quixtar's wrongful conduct, dispute was between two Michigan corporations, key meeting took place in Michigan, and Quixtar's actions that allegedly resulted in injury occurred in Michigan); *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 679-80 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Colorado has a greater interest in the dispute and a greater connection to the litigation such that the burden of the litiga-

tion is more appropriately placed on the citizens of Colorado as opposed to Texas. The duplication of resources resulting from litigation in both Colorado and Texas involving the same parties and many of the same issues, coupled with the plaintiffs not being residents of Texas, tips the balance of *Gulf Oil* factors to favor dismissal and the Colorado forum. *See Tin Star*, 2016 WL 7163862, at *4. This case has no significant connection to Texas.

Focusing on the proper inquiry, which is convenience, we cannot conclude the trial court abused its discretion by balancing the factors in favor of dismissal. We conclude the trial court did not abuse its discretion by granting the motion to dismiss. We overrule appellants' third issue.

CONCLUSION

We affirm the trial court's order.