**Affirmed and Opinion Filed April 26, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00970-CV**

**JUAN GOMEZ LOPEZ AND KENIA ITZEL VALLE MATA, Appellants**
**V.**
**FLUOR CORPORATION, FLUOR ENTERPRISES, INC., AND FLUOR DANIEL MEXICO, S.A., Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-15978**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Appellants sued appellees asserting negligence causes of action in connection with injuries Juan Gomez Lopez sustained in a chemical plant explosion while working in southern Mexico. Appellees filed a motion to dismiss on grounds of forum non conveniens, which the trial court granted. Appellants appeal the portion of the trial court's order that granted the motion to dismiss for forum non conveniens. In their sole issue on appeal, appellants argue the trial court erred when it granted Fluor's motion to dismiss because (i) they are valid Texas residents so the exception to the doctrine of forum non conveniens applies and, in the alternative, (ii) if they

are not Texas residents, the factors set out in § 71.051(e) of the Texas Civil Practice and Remedies Code favor Texas as the forum for their lawsuit. After reviewing the parties' briefs and the record, we affirm the trial court's order dismissing appellants' suit.

This appeal involves the same facts and similar legal arguments as *Fluor Corporation, Fluor Enterprises, Inc., and Fluor Daniel Mexicos, S.A. v. E.D.G.M.*, No. 05-19-00921-CV (Tex. App.—Dallas April 26, 2022, no pet. h.) (mem. op.).[1] That permissive interlocutory appeal involves the portion of the trial court's order denying Fluor's motion to dismiss with respect to appellants' American-born child, E.D.G.M., who filed an interpleader in the underlying suit. In conjunction with our opinion in this appeal, we also issue an opinion addressing the interlocutory appeal filed by Fluor.

## I.    BACKGROUND

### A. April 2016 Explosion

This suit arises from an explosion that occurred on April 20, 2016 at the Petroquimica Mexicana de Vinilo (PMV) "Clorados III" chemical plant in the city of Coatzacoalcos, Veracruz, Mexico (PMV Facility). The PMV Facility produced vinyl chloride. Gomez Lopez worked at the PMV Facility as a welder for Motrek

---

[1] In the trial court's order, it noted that resolution of the forum non conveniens issue as to E.D.G.M. may "materially advance the ultimate termination of the litigation" and permitted an appeal from the interlocutory order pursuant to Texas Rule of Appellate Procedure 51.014(d). On July 12, 2019, the trial court signed an order granting Fluor's agreed motion to sever E.D.G.M.'s interpleader claims making the portion of the order granting Fluor's motion to dismiss as to appellants a final appealable order.

S.A. de C.V., a Mexican company (Motrek). Gomez Lopez suffered significant injuries in the April 2016 explosion, and he received medical treatment in both Mexico and Texas. At the time of the incident, appellants were residents of Mexico and had never visited the United States of America.

## B. December 2016 Lawsuit

On December 15, 2016, Gomez Lopez and his spouse, Kenia Itzel Valle Mata, (collectively, appellants) filed suit against appellees. Appellants pled that (i) Gomez Lopez sustained "physical, mental, and emotional" injuries stemming from appellees' negligence and (ii) Valle Mata suffered from loss of consortium, loss of companionship, and "the increased burdens that her husband's injuries caused to her." Appellants alleged that appellees owned or controlled ICA-Fluor, an entity that "was to provide various services, including engineering, procurement, construction, supervision, and maintenance" at the PMV Facility. Appellants further alleged that "[s]enior officers of the [appellees] supervised, managed, and oversaw the activities of ICA-Fluor as it worked at the PMV Facility."

On January 6, 2017, appellees answered and asserted a motion to dismiss on grounds of forum non conveniens. Appellees asserted that appellants were not legal residents of Texas and that the six factors considered under forum non conveniens favored dismissal. On November 22, 2017, appellants' child, E.D.G.M., was born. On April 20, 2018, E.D.G.M. filed a petition in intervention into this suit. Appellees

subsequently moved to strike and dismiss E.D.G.M.'s petition on grounds of forum non conveniens.[2]

On October 5, 2018, the trial court heard the motion to strike and the motions to dismiss. On July 12, 2019, the trial court signed an order, which partially granted appellees' motion to dismiss for forum non conveniens as follows:

> The Forum Non Conveniens Motions are GRANTED as to the claims asserted by Plaintiffs Juan Gomez Lopez and Kenia Itzel Valle Mata, conditioned upon a court of competent jurisdiction in Mexico accepting jurisdiction of these cases against these Defendants, and Defendants waiving any statute of limitations defense when Plaintiffs refile in Mexico. Plaintiffs may move to reinstate this action in the event Defendants attempt to evade jurisdiction or interpose a limitations defense in Mexico. Subject to the above conditions, the claims asserted by Plaintiffs Juan Gomez Lopez and Kenia Itzel Valle Mata are hereby dismissed pursuant to Texas Civil Practice and Remedies Code Section 71.051(b).

This appeal followed.

## II.    ISSUES RAISED

Appellants raise a single issue to our Court, along with two sub-issues, which we reproduce verbatim:

> Did the trial court abuse its discretion in granting Appellees' Motion to Dismiss for Forum Non Conveniens?
>
> > 1. Are Appellants valid Texas residents so that a finding of Forum Non Conveniens is barred by Tex. Civ. Prac. & Rem. Code § 71.051(e)?

---

[2] The trial court's adjudication of appellees' motion to strike and motion to dismiss E.D.G.M.'s petition in intervention is the subject of our Court's companion case in Cause No. 05-19-00921-CV.

2. If Appellants are not found to be Texas residents, do the factors set out in Tex. Civ. Prac. & Rem. Code § 71.051(e) favor Texas as a forum?

## III.  STANDARD OF REVIEW

A forum-non-conveniens determination "'is committed to the sound discretion of the trial court.'" *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 237 (1981)). "It may be reversed only when there has been a clear abuse of discretion; where the court has considered all the relevant public and private interest factors, and where its balancing of these factors is reasonable, its discretion deserves substantial deference." *Id.* "[T]he mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion occurred." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985). As we have held:

> We give the trial court's decision substantial deference: we determine whether there is sufficient evidence to uphold the dismissal, but we do not mechanically re-weigh the factors considered by the trial court.
>
> . . . .
>
> Unless the balance of those factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."

*Tin Star Dev., LLC v. 360-Irvine, LLC*, No. 05-15-01244-CV, 2016 WL 7163862, at *2 (Tex. App.—Dallas Nov. 18, 2016, no pet.) (mem. op.) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

## IV.    FORUM NON CONVENIENS

The doctrine of forum non conveniens permits a court to exercise equitable powers to avoid "imposition of an inconvenient jurisdiction on a litigant" when the court determines (i) the convenience of litigants and witnesses and (ii) the interests of justice warrant litigating the matter in another forum. *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 710 (Tex. App.—Dallas 2010, no pet.). "[W]hile forum-non-conveniens questions differ from due-process inquiries, the doctrine touches on similar issues of fundamental fairness, protecting defendants from being forced to litigate in oppressive and vexatious circumstances." *In re Pirelli Tire*, L.L.C., 247 S.W.3d 670, 676 (Tex. 2007) (internal citation omitted); *In re SXP Analytics, LLC*, No. 14-11-01039-CV, 2012 WL 1357696, at *2 (Tex. App.—Houston [14th Dist.] Apr. 13, 2012, no pet.) (mem. op.) ("There is a strong interest in having localized controversies decided at home in a forum that is familiar with the state law that must govern the case."). "It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *In re Smith Barney, Inc.*, 975 S.W.2d 593, 598 (Tex. 1998).

Texas Civil Practice and Remedies Code § 71.051 provides, in pertinent part:

(b) [. . .] In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:

> (1) an alternate forum exists in which the claim or action may be tried;
> (2) the alternate forum provides an adequate remedy;
> (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
> (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
> (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and
> (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

. . . .

(e) The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state or a derivative claimant of a legal resident of this state. The determination of whether a claim may be stayed or dismissed under Subsection (b) shall be made with respect to each plaintiff without regard to whether the claim of any other plaintiff may be stayed or dismissed under Subsection (b) and without regard to a plaintiff's country of citizenship or national origin.

TEX. CIV. PRAC. & REM. CODE ANN. § 71.051(b), (e). Since the doctrine of forum non conveniens presumes that at least two forums are available to a plaintiff, our first step is to determine whether an alternative forum exists—inquiring as to whether another forum is "available" and "adequate." *Sarieddine v. Moussa*, 820 S.W.2d 837, 841 (Tex. App.—Dallas 1991, writ denied). "If an available and adequate alternative forum exists, we must then consider the balance of the relevant

private—and public-interest factors." *RSR Corp.*, 309 S.W.3d at 710. "Because the forum non conveniens statute does not place the burden of proof on either party, the trial court must resolve these disputes and others based on the 'greater weight of the evidence.'" *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 550 (Tex. 2018) (quoting *In re ENSCO Offshore Int'l. Co.*, 311 S.W.3d 921, 927 (Tex. 2010) (per curiam)). However, if the defendant demonstrates another available forum exists, the plaintiff must then prove that available forum is not adequate. *Sarieddine*, 820 S.W.2d at 841.

## V. MEXICO AS AN ALTERNATIVE FORUM

### A. Availability of Alternative Forum

A forum is "available" if the entire case and all the parties can come within the jurisdiction of that forum. *Sarieddine*, 820 S.W.2d at 841. It is undisputed that, on April 20, 2016, (i) appellants resided in Mexico, (ii) the explosion occurred in Mexico, and (iii) Gomez Lopez was injured in the explosion in Mexico. The record shows appellees are amenable to process and "will submit to the jurisdiction of the appropriate Mexican court in connection with Plaintiff's claims." Thus, appellees have consented to jurisdiction in Mexico. *Piper Aircraft*, 454 U.S. at 242 (a defendant is amenable to process for purposes of a forum non conveniens analysis where the defendant agreed to "submit to the jurisdiction statutes of the Scottish courts"). We conclude that Mexico is an available forum for purposes of further forum non conveniens analysis.

–8–

## B. Adequacy of Alternative Forum

A forum is "adequate" if the parties will not be deprived of all remedies or treated unfairly. *Sarieddine*, 820 S.W.2d at 841. Appellants' briefing and the record show they previously filed suit against appellees in both Mexican state and federal courts in relation to this incident.[3] The record contains dueling expert opinions from Mexican attorneys, both of which describe Mexico's laws regarding negligence and recovery for negligent acts for causing "damage to another." Indeed, appellants' expert states:

> In the specific case, as a result from the damages suffered by the Plaintiffs, a tort action can be enforced.
>
> Under these conditions, <u>provisions set of in section IV of article 116 of the Civil Procedure Code of the State of Veracruz are applicable.</u>

(emphasis in original). Furthermore, the Texas Supreme Court has previously recognized that Mexican law affords adequate remedies in negligence cases. *See, e.g.*, *In re Bridgestone Ams. Tire Ops., LLC*, 459 S.W.3d 565, 576–77 (Tex. 2015) (holding in a case involving a wrongful death that "the presence of the Texas defendants does not meaningfully distinguish this case from *Pirelli Tire* for purposes

---

[3] In appellants' response to appellees' motion to dismiss for forum non conveniens, appellants admit they previously filed suit in Mexico. Nevertheless, appellants argued before the trial court that the Mexican courts lack jurisdiction over appellants under Article 23 of "Mexico's Federal Code of Civil Procedure" because such jurisdiction in Mexico would require "mutual consent." Appellants asserted "[t]hat consent is obviously not granted by Plaintiffs." Appellants' briefing before our Court asserts "[a]ppellants do not and will not consent to jurisdiction" in Mexico.

–9–

of evaluating the adequacy of the alternate forum as part of the forum-non-conveniens analysis."); *Pirelli Tire*, 247 S.W.3d at 678 (holding (i) that Mexican law provided available and adequate remedy for a negligence action and therefore (ii) Mexico was an adequate forum to adjudicate a negligence action related to a car accident—consequently dismissing for forum non conveniens). We conclude that Mexico is an available forum for purposes of further forum non conveniens analysis.[4] Having determined that an alternative forum exists, we next discuss appellants' issues.

## VI. DISCUSSION

### A. Appellants' Texas Residency

In granting appellees' motion to dismiss on the basis of forum non conveniens, the trial court impliedly found appellants were not legal residents of Texas. In the first part of appellant's issue, they assert the trial court erred because their suit may not be barred by forum non conveniens—arguing they are Texas residents subject to the exception found in § 71.051(e) of the Texas Civil Practice and Remedies Code. In response, appellees argue appellants do not satisfy the "legal resident" exception.

---

[4] We note that "adequacy" under our forum non conveniens analysis does not require that the alternative forum provide the same potential relief as an American court. *See Pirelli Tire*, 247 S.W.3d at 678 ("That the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight. … [A]n alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court.") (internal citations and quotations omitted).

–10–

Because the statute no longer defines "legal resident," "the common, ordinary meaning of the term applies unless a contrary meaning is apparent from the statute's language or the common meaning would lead to absurd or nonsensical results." *Harris Cty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 122 (Tex. 2017) (citing TEX. GOV'T CODE ANN. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.")).[5] When ascertaining the meaning of a statute's undefined terms, "we typically look first to their dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities." *Id.* at 129 (quoting *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)). If a term has multiple common meanings, Texas courts apply "the definition that is most consistent with its use in the context of the statute." *Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex. 2015).

Black's Law Dictionary's definition for "legal residence" refers to the term "domicile," which provides:

> 1. The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though

---

[5] Before the 2015 amendment, § 71.051(h)(1) contained the following definition for "legal resident":

"Legal resident" means an individual who intends the specified political subdivision to be his permanent residence and who intends to return to the specified political subdivision despite temporary residence elsewhere or despite temporary absences, without regard to the individual's country of citizenship or national origin. The term does not include an individual who adopts a residence in the specified political subdivision in bad faith for purposes of avoiding the application of this section

DOCTRINE OF FORUM NON CONVENIENS, 2015 Tex. Sess. Law Serv. Ch. 537 (H.B. 1692).

currently residing elsewhere. Domicile may be divided into (1) domicile of origin, (2) domicile of choice, and (3) domicile by operation of law. — Also termed *permanent abode*; *habitancy.*

2. The residence of a person or corporation for legal purposes. — Also spelled (BrE) *domicil.* — Also termed (in sense 2) *legal residence*; *domicile by operation of law.*

*Domicile*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Texas Court of Civil Appeals recognized the synonymous, interchangeable nature of the term "legal residence" with the term "domicile":

> In the construction of similar statutes in several other states, it has been held that the residence contemplated by the statutes is an actual residence, and not a mere legal residence, or one based upon a mere intention to return to the state while residing elsewhere. In the case of *Tipton v. Tipton*, 8 S.W. 440, the Court of Appeals of Kentucky said: *"There is a broad distinction between a legal and an actual residence. A legal residence (domicile) cannot, in the nature of things, coexist in the same person in two states and countries. He must have a legal residence somewhere.*
> . . . .
> *As contradistinguished from his legal residence, he may have an actual residence in another state or country.*

*Michael v. Michael*, 79 S.W. 74, 75 (1904, no writ) (emphasis added). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)).

Appellants suggest the relevant time period for assessing legal residency is some time *after* filing suit, but appellants offer no supporting authority. We have

found no according support. To the contrary—for forum non conveniens purposes—we evaluate whether a plaintiff was a "legal resident" of Texas "at the time of filing." *See Owens Corning v. Carter*, 997 S.W.2d 560, 577 (Tex. 1999) (discussing forum non conveniens as "unlike" § 71.052 because § 71.051 involves consideration of "plaintiff's residence at the time of filing.").

As discussed above, there is no dispute that appellants were legal residents of Mexico at the time of the explosion. The record does not indicate their legal residence changed from Mexico to Texas at the time the suit was filed on December 15, 2016, or thereafter. Indeed, both appellants admitted in discovery responses that: (i) they are in the United States on a visa; (ii) they had never been to Texas or the United States prior to the incident; (iii) they had never been to Texas for any reason other than for Gomez Lopez to receive medical treatment in connection with injuries he sustained in the incident; and (iv) that they maintain residence in Mexico. The record shows appellants entered the United States on B-2 "Pleasure, Tourism, Medical Treatment – Visitor Visas", which were issued on November 18, 2016 and expired on November 16, 2019, respectively. Such B-2 visas can only be obtained by nonimmigrant individuals who do not intend to relocate their residence to the United States. *See* 8 U.S.C. § 1101(a)(15)(B); 22 C.F.R. § 41.11(a).[6] Although

---

[6] The United States Code provides:

> The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens-- . . . . an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press,

appellants testified in their depositions that "papers" were "in process" for them to stay in the United States permanently, there is no corroborating documentation or evidence in the record. Gomez Lopez did not recall whether he planned to move to the United States permanently when he completed his visa application. After appellants' depositions occurred on August 6, 2018, both appellants signed declarations dated September 2, 2018, which state they each "intend to remain in Galveston" and "have no residence in Mexico to return to."

Appellants refer us to a single Texas Supreme Court case and several cases from our sister courts and federal courts, which are not precedential before our Court to argue that they have met the requirements for "legal residency" in the forum non conveniens context. In civil matters, "this Court is bound by decisions of the United States Supreme Court, the Texas Supreme Court, and prior decisions of this Court." *Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 284 (Tex. App.—Dallas 2012, no pet.). Nevertheless, those cases cited by appellants either (i) do not include an

---

radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure.

8 U.S.C. § 1101(a)(15)(B). The Code of Federal Regulations provides:

An applicant for a nonimmigrant visa . . . shall be presumed to be an immigrant until the consular officer is satisfied that the alien is entitled to a nonimmigrant status . . . or otherwise established by law or treaty. The burden of proof is upon the applicant to establish entitlement for nonimmigrant status and the type of nonimmigrant visa for which application is made.

22 C.F.R. § 41.11(a).

analysis of "legal residency" under forum non conveniens[7] or (ii) do not extend "legal residency" to nonimmigrant, temporary visa holders under forum non conveniens analysis.[8] *See* 8 U.S.C. § 1101(a)(15)(B); 22 C.F.R. § 41.11(a). We pretermit further discussion of those cases.

"A trial court does not abuse its discretion when it bases its decision on conflicting evidence and there is evidence in the record that reasonably supports the decision." *RSR Corp.*, 309 S.W.3d at 709. Here, "the trial court judged the credibility of the witnesses and was entitled to believe or disbelieve" any of evidence. *Keever v. Finlan*, 988 S.W.2d 300, 314 (Tex. App.—Dallas 1999, pet. dism'd). "The trial court's choices among merely conflicting pieces of evidence cannot be an abuse of discretion." *Id*. On the record before us, we conclude the appellants have not shown the trial court abused its discretion in impliedly finding appellants were not legal residents of Texas.

The first part of the issue is decided against appellants. As the Texas resident exception found in § 71.051(e) does not apply to appellants, we proceed to

---

[7] *See generally Ex parte Blumer*, 27 Tex. 734 (1865); *Franyutti v. Franyutti*, No. 04-02-00786-CV, 2003 WL 22656879, at *1 (Tex. App.—San Antonio Nov. 12, 2003, no pet.) (mem. op.); *Mills v. Bartlett*, 375 S.W.2d 940, 941 (Tex. Civ. App.—Tyler 1964), aff'd, 377 S.W.2d 636 (Tex. 1964); *Allison v. Allison*, 373 S.W.2d 862 (Tex. Civ. App.—Eastland 1963, no writ).

[8] *See generally Tellez v. Madrigal*, 223 F. Supp. 3d 626, 631 (W.D. Tex. 2016); *Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 475 (Tex. App.—Corpus Christi 2006, pet. denied); *Jones v. Raytheon Aircraft Services, Inc.*, 120 S.W.3d 40, 41 (Tex. App.—San Antonio 2003, pet. denied).

appellants' alternative argument based on the six factors for determining forum non conveniens in § 71.051(b).

## B. Forum Non Conveniens Factors

In the second part of issue one, appellants argue the trial court erred when it granted Fluor's motion to dismiss on the basis of forum non conveniens because the six factors set out in § 71.051(b) of the Texas Civil Practice and Remedies Code favor Texas as the forum for their lawsuit. Appellants' briefing first addresses the fifth factor, so we begin our analysis on that factor.

***Fifth Factor: The Balance Of The Private Interests Of The Parties And The Public Interest Of The State Predominate In Favor Of The Claim Or Action Being Brought In An Alternate Forum, Which Shall Include Consideration Of The Extent To Which An Injury Or Death Resulted From Acts Or Omissions That Occurred In This State***

Appellants first argue that the balance of private interests of the parties and public interests of the state of Texas favor Texas as a forum for their suit.[9]

---

[9] We note that several of appellants' citations to the clerk's record, clerk's supplemental record, and clerk's second supplemental record appeared to be erroneous. Texas Rule of Appellate Procedure 38.1(i) requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). We have neither the obligation nor the right to search the record for facts that may be favorable to a party's position. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) (citing *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283–84 (Tex. 1994)).

We requested that appellants submit a corrected brief, which appellants submitted on August 27, 2021. However, appellants' corrected brief failed to correct their citations to the clerk's record, clerk's supplemental record, and clerk's second supplemental record. Instead, appellants included several footnotes stating:

> The Clerk's Record referred to is the Clerk's Record from Appellate Case No. 05-19-00921CV, consolidated with 05-19-00933CV.

### i. *Private Interests*

We have previously enumerated the private-interest factors considered in a forum non conveniens application:

(1) the ease of access to sources of proof;
(2) the availability of the compulsory process for attendance of unwilling witnesses;
(3) the cost of obtaining the attendance of willing witnesses;
(4) all other practical problems affecting the ease and expense of the case; and
(5) issues related to the enforceability of a judgment obtained in the forum.

*Grynberg v. Grynberg*, 535 S.W.3d 229, 236 (Tex. App.—Dallas 2017, no pet.). Appellants assert that their suit "does not require any evidence in Mexico"—arguing that notice of the dangerous condition, all witnesses, and all evidence regarding notice are located in Texas. Appellants further argue that the bulk of Gomez Lopez's medical treatment occurred in Texas and, therefore, the case should remain in Texas. Lastly, appellants assert the "scene of the accident" was in the Houston and Dallas offices of Fluor. Appellants direct us to no record citation in support of these assertions. In response, appellees assert appellants' "contention is illogical on its face" due to the record. We agree with appellees.

---

Although Case No. 05-19-00921-CV is a companion case to this case, the two cases are not consolidated and have their own unique, independent records. Case No. 05-19-00921-CV will issue with a separate opinion addressing the issues brought in that case.

Although we could find briefing waiver, appellants' errors do not "thwart a merits-based disposition." *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019). Nevertheless, this opinion should not be understood to be endorsing the practice of cross-referencing records.

As discussed above, the incident occurred in Mexico at a PMV chemical plant. The record shows that PMV was a joint venture between a Mexican state-owned company, Petróleos Mexicanos (also known as Pemex), and a Mexican chemical company, Mexichem. ICA Fluor—a Mexican company in which appellees have minority ownership interest—contracted with PMV to "revamp" the PMV Facility. ICA Fluor's majority owner is a Mexican company named Construcciones y Trituraciones, S.A. de C.V. (CTSA). CTSA is a subsidiary of another Mexican company, Empresas ICA, S.A.B. de. C.V. (Empresas ICA). ICA Fluor subcontracted with Motrek, among other companies, to perform work at the PMV chemical plant. At the time of his injury, Gomez Lopez worked as an employee of Motrek.[10]

---

[10] The record contains the following chart, which both parties used to show the relationships between these Mexican entities, appellants and appellees:



Before Gomez Lopez's injury, appellants resided in Mexico and had never been to Texas or the United States. The record shows that, after the incident, Gomez Lopez received medical treatment—including seven days in an induced coma and two months of treatment—in Mexico before travelling to Texas. As we have concluded above, appellants are not residents of Texas but resided in Mexico. Notwithstanding the evidence that appellants filed multiple suits in Mexico, appellants executed a settlement agreement with PMV in Mexico, in which appellants received a payment in the amount of 4,403,364.00 pesos.[11] The settlement agreement, translated from Spanish, refers to Gomez Lopez as "Worker" and provides:

---

[11] The record shows appellants received and cashed this payment.

Petroquímica Mexicana de Vinilo S.A. de C.V. (PMV) herein delivers to the Worker, and he receives to his entire satisfaction, the amount of $ 4,403,364.00 (Four million four hundred three thousand three hundred sixty-four pesos 00/100) Mex. Cy., as conventional compensation accepted by both parties, for reparation of the material and moral damages, referred to in this agreement, by check of BANCO NACIONAL DE MEXICO, S.A., with number 240 dated June 9, 2016; copy of the same is attached to this agreement.

Third.- The Worker, accepts that with the indemnification that will be covered pursuant to the Second Clause, he is legally and entirely satisfied regarding the claims and benefits to which he is entitled, presently or in the future, regarding the damages that were caused to him, while he rendered his services to Motrek, S.A. de C.V., who was his employer and the sole responsible for his employment relationship at the Pajaritos petrochemical complex, in Coatzacoalcos, Veracruz, where the incident occurred on April 20, 2016.

Likewise, the Worker (a) states that he does not reserve for himself any right or action to exercise, against PMV, or against the companies indicated and involved in the complex named "Clorados III", located at the property known as Pajaritos, in Coatzacoalcos, Veracruz, such as Petroquímica Mexicana de Vinilo, S.A. de C.V., Mexichem, S.A.B. de C.V. and Mexichem Derivados, S.A. de C.V.; their representatives, employees and/or officers, attorneys, as well as affiliates, subsidiaries, related parties and representatives, from any civil, criminal, labor, commercial, administrative, collective rights liability or for any damage to his feelings, affections, beliefs, decorum, honor, reputation, private life, physical configuration and appearance, or else in the consideration that others have of himself; as well as some impairment to his psychic integrity and/or any other damage that may be considered of a moral or property nature, derived from the aforementioned event; for which they extend the broader settlement applicable by law for all legal effects that may arise and recognize that the aforementioned companies are supporting compliance with the payment of compensations referred to in this agreement in solidarity and even much higher than required by law. [12]

Furthermore, the record contains news reports from Costa Veracruz, translated from Spanish, which contain references to Pemex, Mechicem, and ICA Fluor. The Costa Veracruz news report contains statements from Ricardo Zavaleta— a safety inspector who worked for a company that ICA Fluor had subcontracted— that (i) leaks at the PMV Facility were reported on the date of the explosion; (ii) "the piping was leaking, it was rusted"; and (iii) "the piping already needed to be changed." The record further shows that Mexican governmental entities are conducting criminal, labor, and environmental investigations related to the incident.

---

[12] This settlement agreement is explicitly governed by Mexican law.

Geoffrey Telfer—a senior vice president of corporate finance and investor relations for Fluor Corporation—testified the Mexican authorities did not allow appellees to conduct an investigation of the explosion.

Appellants assert appellees were connected to the incident through their ownership or control of ICA Fluor, which operated the PMV Facility with PMV. Appellants refer us to several of appellees' employees that also served ICA Fluor in corporate or executive positions to suggest such ownership and control. But the record contains evidence that the day-to-day operations of ICA Fluor were not managed by those employees. Instead, the record shows that a management group of Mexican residents based in Mexico managed the operations and day-to-day affairs of ICA Fluor—primarily through ICA Fluor's director general, Juan Carlos Santos.[13] Carlos Santos was an employee of Empresas ICA. The record shows appellees'

---

[13] Specifically, Telfer testified in his declaration that:

> The operations and day-to-day affairs of ICA Fluor are not managed by the Board of Directors or the Executive Committee. Rather, the operations and day-to-day affairs of ICA Fluor are managed by a group of high level employees consisting of a General Director, a Director of Operations, a Business Development Director, and four Project Directors (the "Management"). Each member of the Management is based in Mexico City and is a resident of Mexico. In April of 2016, each member of the Management was also based in Mexico City and was a resident of Mexico. The management and supervision of ICA Fluor is not done in Dallas County, Texas, but rather in Mexico City, Mexico. Similarly, ICA Fluor is not operated out of Dallas County, but rather out of Mexico City, Mexico.

Telfer's further testified about ICA Fluor's management during his deposition:

> Q. The day-to-day management of the company, however, is under the direction of the executive committee, right?
>     A.  Not correct.
> Q.  Is that what it says in the formation docs?
>     A.  Back in 1993, that's what it said in to formation documents, that is no longer the way that it's managed. . . . . [W]e don't manage ICA Fluor. ICA Fluor is managed by themselves.

employees—who worked remotely on the PMV project from Texas—were subordinate to Carlos Santos.

The record shows appellees' involvement regarding the conditions at the PMV Facility were remote. During his deposition, Telfer described his work on the executive committee of ICA Fluor, explaining that (i) his and appellees' other executive committee members' involvement with ICA Fluor involved financial components and project milestones instead of day-to-day management; (ii) he had no knowledge of the PMV Facility's steering committee; (iii) appellees' employees were used "very little" in ICA Fluor projects; and (iv) none of appellees' employees worked on-site at the PMV Facility. Telfer testified that a total of eight of appellees' employees worked remotely on the PMV Facility—compared to the over 700 people that worked at the PMV Facility with about 200 employees of ICA Fluor and 500 employees of ICA Fluor's subcontractors.

It is evident from the record that the majority of the witnesses and involved entities are in Mexico and are otherwise amenable to jurisdiction and process in Mexico. The record suggests the costs of obtaining the attendance of willing witnesses would be lower in Mexico than in Texas. Furthermore, compared to the court(s) in Mexico, the trial court does not enjoy compulsory process to compel attendance of witnesses who are in Mexico. *See, e.g.*, TEX. R. CIV. P. 176.3.[14] It is

---

[14] "A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served." TEX. R. CIV. P. 176.3(a).

further apparent from the record that Mexico would provide greater ease of access to the sources of proof than Texas. Appellants raise no concern regarding the enforceability of a Mexican judgment. Appellees, in addition to accepting process in Mexico, agreed to pay any finally adjudicated judgment rendered against them in Mexico. *See Simcox v. McDermott Intern., Inc.*, 152 F.R.D. 689, 695 (S.D. Tex. 1994) (holding that defendant's agreement to pay final judgment by a foreign court allayed concerns about the enforceability of the judgment).[15] We must conclude the trial court did not abuse its discretion in balancing the private interest factors in favor of dismissal for forum non conveniens.

### ii. *Public Interests*

We have previously enumerated the public-interest factors considered in a forum non conveniens application:

(1) the burden imposed on the citizens of the state;
(2) the burden imposed on the state's court;
(3) the general interest in having localized controversies decided in the jurisdiction in which they arose; and
(4) the appropriateness in having a diversity case tried in a forum that is familiar with the law that must govern the case.

---

[15] In *Simcox v. McDermott Intern. Inc.*, the United States District Court for the Southern District of Texas, Houston Division held:

> Any concerns about the enforceability of a judgment obtained in one of the forums are allayed both by the presence of the assets of certain of the defendants in the foreign forums and the condition imposed by the court that the defendants agree to pay any final judgment rendered by the foreign court.

152 F.R.D. at 695. We further note that appellants may enforce any judgment obtained against appellees in the United States under the Uniform Enforcement of Foreign Judgments Act and Texas Civil Practice and Remedies Code. *See* CIV. PRAC. & REM. § 35.003.

*Grynberg*, 535 S.W.3d at 235. Appellants assert these public-interest factors support adjudication in Texas, rather than Mexico. Without citation to the record or authority, appellants assert that there are "no administrative difficulties" to trying the case before the trial court. Appellees assert that appellants seek to burden the citizens and courts of the State of Texas with a controversy that—as discussed above—has already begun some adjudication and reached some settlement in Mexico, which has "no significant connection to Texas." *Pirelli Tire*, 247 S.W.3d at 679.

It is apparent from the record and pleadings that the controversy here involves (i) an explosion that occurred at a chemical plant in Mexico, (ii) a plaintiff who was injured in Mexico, (iii) plaintiffs who resided in Mexico, (iv) plaintiffs who filed two suits in Mexico against the chemical plant's operators, (v) plaintiffs who reached and received settlement with the chemical plant's operators, (vi) plaintiffs who then sought further recovery from one of the chemical plant's operators' minority owners in Texas as defendants, and (vii) defendants who have agreed to process and payment of a final judgment before a Mexican jurisdiction. The record further shows Mexican agencies have already begun to respond to the explosion, including: pursuing an investigation with federal inspectors; issuing 238 remedial measures by the Mexican Federal Ministry of Labor; and initiating twenty-two criminal complaints by the Mexican Attorney General, which include homicide and environmental crimes. In *Pirelli Tire*, the Texas Supreme Court held:

–24–

> Mexico's interest in protecting its citizens and seeing that they are compensated for their injuries is paramount. The safety of . . . products within the country's borders are also Mexican interests.

247 S.W.3d at 679. Here, it is evident that (i) there are two potential forums: Mexico and Texas—which implicate the law of their respective jurisdictions and (ii) Mexico has a far greater interest in the controversy between appellants and appellees.

Appellants next assert that there "is no need to apply Mexican law." Appellees respond that Mexican law will govern "most—if not all—of this case." "Which state's law governs an issue is a question of law for the court to decide." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). "Texas uses the Restatement's 'most significant relationship' test to decide choice-of-law issues." *Id*. We recently held:

> In actions for personal injury or wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 [referring to Choice of Law Principles of the Restatement] to the occurrence and the parties, in which event the local law of the other state will be applied.

*Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 119 (Tex. App.—Dallas 2020, no pet.) (referring to RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 6 (AM. LAW INST. 1971), citing RESTATEMENT §§ 146 (personal injuries), 175 (wrongful death)). As discussed above, the injury occurred in Mexico, and therefore, Mexican law should determine the rights and liabilities of the parties. *See id*. Appellants offer no rebuttal, and we have found no rebutting evidence in the record, to suggest any other

state's laws apply under the "most significant relationship" test. *See Torrington Co.*, 46 S.W.3d at 848.

"Dismissal in this case would promote judicial economy by reducing the multiplicity of suits related to the same controversy." *Grynberg*, 535 S.W.3d at 235 (quotation omitted). It is not convenient to litigate the same claims in two forums. "Such a duplication of resources does not help 'make trial of a case easy, expeditious and inexpensive.'" *Grynberg*, 535 S.W.3d at 235 (quoting *Gulf Oil Corp*, 330 U.S. at 508). We must conclude the trial court did not abuse its discretion in balancing the public interest factors in favor of dismissal.

### First Factor: an Alternate Forum Exists In Which The Claim Or Action May Be Tried

As we have concluded above, Mexico is an alternative forum in which appellants' claims may be tried. We must conclude the trial court did not abuse its discretion in balancing this first forum non conveniens factor in favor of dismissal.

### Second Factor: the Alternate Forum Provides An Adequate Remedy

As we have concluded above, Mexico is an alternative forum, which provides an adequate remedy. We must conclude the trial court did not abuse its discretion in balancing this second forum non conveniens factor in favor of dismissal.

### Third Factor: Maintenance Of The Claim Or Action In The Courts Of This State Would Work A Substantial Injustice To The Moving Party

Without citation to authority, appellants assert that maintaining this case in Texas would not result in substantial injustice to appellees, since appellees are

headquartered in Dallas County. Appellees respond that maintaining this suit in Texas would work a substantial injustice to appellees because the majority of the witnesses and the evidence are located in Mexico.

In our analysis of whether the maintenance of the claim would work a substantial injustice to the moving party, we consider both the location of witnesses and evidence. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 689 (Tex. 2008). As we have discussed above, Texas lacks compulsory process for reaching most of the witnesses in Mexico. *In re ENSCO Offshore Intern. Co.*, 311 S.W.3d at 925. Furthermore, we recognize that (i) much of the evidence relevant to the explosion is in Mexico and (ii) the place of Gomez Lopez's injuries was Mexico. *See* TEX. R. CIV. P. 176.3; *In re Gen. Elec. Co.*, 271 S.W.3d at 689. Requiring parties to litigate a case such as this in Texas—even though the injury occurred in a foreign jurisdiction in which (i) the injured parties have already sought recovery and (ii) much of the evidence and witnesses are located—would be a "waste of private and public resources." *In re Gen. Elec. Co.*, 271 S.W.3d at 689 (citing *Gulf Oil Corp.*, 330 U.S. at 511).[16] We must conclude the trial court did not abuse its discretion in balancing this third forum non conveniens factor in favor of dismissal.

***Fourth Factor: the Alternate Forum, As A Result Of The Submission Of The Parties Or Otherwise, Can Exercise Jurisdiction Over All The Defendants Properly Joined To The Plaintiff's Claim***

---

[16] "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.*, 330 U.S. at 511.

As we have concluded above, Mexico is an alternate forum that can exercise jurisdiction over all of the parties, and the record shows appellees are amenable to jurisdiction and process in Mexico. We must conclude the trial court did not abuse its discretion in balancing this fourth forum non conveniens factor in favor of dismissal. *See id.* at 693.

### *Sixth Factor: the Stay Or Dismissal Would Not Result In Unreasonable Duplication Or Proliferation Of Litigation*

Appellants provide no briefing on this factor. Appellees assert that dismissal of this Texas suit would permit a presiding Mexican court to exercise jurisdiction over (i) appellants and other potential plaintiffs—who are not parties in this instant litigation—injured in the PMV Facility explosion and (ii) appellees and any other compulsory defendants involved in the PMV Facility explosion. In light of the record before our Court and our conclusions above, we conclude the appellants have not shown the trial court abused its discretion in balancing this sixth forum non conveniens factor in favor of dismissal.

### *Forum Non Conveniens Factors: Conclusion*

We conclude the trial court did not abuse its discretion when it balanced the six factors for determining forum non conveniens. The second part of the issue is decided against appellants.

## VII. CONCLUSION

–28–

Having concluded the trial court did not abuse its discretion in (i) impliedly finding appellants were not legal residents of Texas and (ii) balancing the forum non conveniens factors in favor of dismissal, we overrule appellants' issue. We affirm the judgment of the trial court.

/Bill Pedersen, III//

BILL PEDERSEN, III
190970f.p05                                    JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JUAN GOMEZ LOPEZ AND
KENIA ITZEL VALLE MATA,
Appellants

No. 05-19-00970-CV          V.

FLUOR CORPORATION, FLUOR
ENTERPRISES, INC., AND FLUOR
DANIEL MEXICO, S.A., Appellees

On Appeal from the 298th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-16-15978.
Opinion delivered by Justice
Pedersen, III. Justices Osborne and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **AFFIRMED**.

It is **ORDERED** that appellees FLUOR CORPORATION, FLUOR
ENTERPRISES, INC., and FLUOR DANIEL MEXICO, S.A. recover their costs
of this appeal from appellants JUAN GOMEZ LOPEZ and KENIA ITZEL
VALLE MATA.

Judgment entered this 26th day of April, 2022.